THE PEOPLE *ex rel.* RICHARD L. BROCH, State's Attorney of Douglas County, Plaintiff-Appellant and Cross-Appellee, v. FLOYD L. HOGG *et al.*, Defendants-Appellees and Cross-Appellants.

Fourth District   No. 4—90—0593

Opinion filed April 12, 1991.

Richard L. Broch, State's Attorney, of Tuscola (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn W. Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellant.

Michael K. Radloff, of Ryan, Cini & Bennett, of Mattoon, for appellees.

JUSTICE STEIGMANN delivered the opinion of the court:

The Illinois Supreme Court last addressed the issue of vehicle forfeiture under section 505(a)(3) of the Illinois Controlled Substances Act (Act) (Ill. Rev. Stat. 1989, ch. 56½, par. 1505(a)(3)) in *People v.*

*1946 Buick, VIN 34423520* (1989), 127 Ill. 2d 374, 537 N.E.2d 748, wherein the court wrote the following:

> "The State asserts that the mere existence of a controlled substance on the person of a vehicle occupant subjects the vehicle to forfeiture. However, [defendant] not only possessed the drug on his person while in the vehicle, but used the vehicle to hide the cocaine from the police [by emptying a packet of cocaine on the floor of the vehicle]. Because we are not confronted with the precise factual situation posed by the State, we decline to address the argument." *Buick*, 127 Ill. 2d at 378, 537 N.E.2d at 750.

The issue on appeal in this case is that "precise factual situation posed by the State" that the supreme court declined to address in *Buick*. For the reasons that follow, we hold that the State's assertion is correct.

## I. FACTS

In May 1990, the State's Attorney of Douglas County filed a complaint for forfeiture under section 505(a)(3) of the Act (Ill. Rev. Stat. 1989, ch. 56½, par. 1505(a)(3)). In June 1990, that complaint was amended, and defendant filed his answer. A hearing thereon was conducted in August 1990. The evidence presented at that hearing is summarized as follows.

Illinois State Trooper Greg Lindenmulder testified that on April 17, 1990, about 1:30 p.m., he observed a black Pontiac Fiero heading northbound on Interstate 57. Every window in the vehicle was tinted. He stopped the car; defendant, Floyd Hogg, was its driver and sole occupant. Lindenmulder escorted defendant back to the squad car and wrote him a warning ticket regarding the tinted windows. Lindenmulder asked defendant where he was headed, and Hogg replied that "[h]e was going up north to visit his sister's [*sic*] and that he'd be there for a couple of days." Noticing that defendant had no luggage with him, Lindenmulder asked defendant if he had any weapons in his vehicle, and defendant replied, "No." Lindenmulder then asked defendant if he had any drugs in his vehicle. Lindenmulder testified that defendant responded that his girlfriend had the vehicle earlier and some friends in the vehicle, so he was not sure what was in the vehicle. Lindenmulder testified that defendant then told him that he could look in the vehicle if he wished.

After the paperwork regarding the warning ticket had been completed, Lindenmulder and defendant walked up to the passenger side of the Pontiac, and defendant opened the passenger side door. A

brown bottle containing a white powdery substance fell out and rolled on the ground. (A forensic scientist employed by the State Police testified at the August hearing that this bottle did not contain any controlled substances; instead, it contained a white, powdery sugar called inositol, which is commonly used as a cutting agent for cocaine and other controlled substances.)

Lindenmulder then looked inside defendant's vehicle and observed a drinking straw approximately 1½ inches in length on the floor on the passenger side. He picked it up, peered inside, and was able to observe therein a white powdery residue. Lindenmulder testified that he looked inside the straw because, based upon his experience as a police officer, he knew that a straw of this kind is often used "to snort cocaine." Lindenmulder then gave the straw to Trooper Cessna, who had recently arrived as a back-up officer. Cessna performed a field test on the straw, which was positive for cocaine.

Lindenmulder then advised defendant that he had found the straw, that it contained cocaine, and that defendant was under arrest. Lindenmulder then searched defendant but found nothing. During the search, defendant was asked to take his shoes off, and he sat in the front seat of the squad car to do so. He placed his hand inside his sock, and when he pulled his hand out, it was cupped, with his fingers closed in a fist. Defendant then placed his hand inside his jacket pocket. Lindenmulder reached in the jacket, grabbed defendant's hand, pulled it out of the jacket pocket, and opened defendant's fingers. He found a brown vial with a white powdery substance. (The forensic chemist testified at the August hearing that she tested the white powdery contents of this brown vial and found that the contents weighed 1.26 grams and contained cocaine.)

At the Douglas County jail, defendant's wallet was removed from his pants pocket, and the money was taken out and counted. Defendant had a total of $990 in United States currency in his wallet. Among the cash, Lindenmulder found a $2 bill that had a white powdery residue visible on its surface. Lindenmulder thought the substance might be cocaine. (The forensic chemist subsequently determined that the powder on the $2 bill contained cocaine.)

Defendant testified that he was a coal miner and that he also repaired boats. He stated that the money he was carrying came from two workers' compensation checks he had recently cashed. Defendant denied that any of the money came from selling cocaine or that he was going to use any of it to buy cocaine. Defendant maintained that he usually carries large amounts of money with him because he was

a "wildcatter," a person who buys boat motors and trailers and repairs them. He presented payment stubs from two workers' compensation checks, one dated April 10, and the other dated March 22. Defendant claimed, however, that he usually receives these checks later than the dates shown thereon.

Defendant admitted having cocaine in his possession, but denied using the $2 bill or the straw to ingest cocaine. Instead, defendant explained that he used the top of the brown vial in which the cocaine was found "for snorting cocaine." Defendant did not recall if he had used any cocaine on the day he was arrested. Defendant had placed the vial with the cocaine in his sock when he left his home that morning: "That's where I carry it."

Defendant was emphatic that he did not use cocaine while he was in his car, explaining, "It's a powdery substance; any kind of wind will blow it away. You just don't do that." Defendant denied using his car to sell cocaine, maintaining that he never sold cocaine.

Defendant said he paid $100 for the cocaine in his possession when he was arrested. He further claimed to have had that cocaine in his possession for "probably a month and a half." Defendant denied ever seeing the straw before it was removed from the floor of his car. He also testified that he had no particular reason for possessing the $2 bill that had the cocaine residue upon it.

Defendant denied that he had the inositol to "cut" the cocaine, explaining that he used it for iced tea, "for people that [sic] are fat like me." When asked why the inositol was in a little plastic container, defendant stated the following:

> "That's what you take it in when you go into a store or something. When you go in to buy ice tea or something instead of using sugar off the table, you just reach up and do it. Pour it in."

In the State's complaint for forfeiture, the State sought an order that both defendant's vehicle and his $990 in cash be declared forfeited. After hearing evidence and arguments of counsel, the court took the matter under advisement. It subsequently entered an order (a) granting the State's request that the $990 be forfeited, and (b) denying the State's request for forfeiture with regard to defendant's automobile. The only explanation provided by the trial court for its denial of the forfeiture of defendant's vehicle is the following: "That possession of 1.2 grams of cocaine in a vehicle does not subject said vehicle to forfeiture as facilitating possession of cocaine."

The State appeals the denial of its petition to forfeit defendant's automobile. Defendant cross-appeals the forfeiture of his $990 in United States currency.

## II. State's Request To Forfeit Defendant's Automobile

In *Buick*, the supreme court analyzed the statutory provisions regarding forfeiture of automobiles and wrote the following:

> "Section 505(a)(3) of the Act provides that a vehicle is subject to forfeiture if it is 'used *** in any manner to facilitate any violation of [the] Act.' As the appellate court and both parties correctly note, the key word in the statute is 'facilitate.' Facilitate means '[t]o make easier or less difficult.' (Black's Law Dictionary 531 (5th ed. 1979).) Therefore, if the vehicle, with knowledge and consent of the owner, is used in any manner to make possession of the controlled substance easier or less difficult, the vehicle is subject to forfeiture.

> In this case, it is undisputed that [defendant] emptied the packet of cocaine onto the floor of his vehicle in order to hide it from the view of the police. Having determined that the cocaine was hidden on the floor of the vehicle, the inescapable conclusion is that the vehicle was used, unsuccessfully in this case, to make [defendant's] continued possession of the drug easier. Consequently, his vehicle is subject to forfeiture under section 505(a)(3) of the Act.

> ***

> [Defendant's] final contention concerns the appropriate standard of review. [Defendant] contends that we may only overturn the trial court's ruling if it is against the manifest weight of the evidence. However, because the facts are undisputed and the decision turns only on the proper interpretation of the statute, we may review the trial court's ruling as a matter of law." *Buick*, 127 Ill. 2d at 377-78, 537 N.E.2d at 750.

■ In the present case, the only way defendant could be said to have used his vehicle to hide the cocaine from the police (as the State in fact argues) is by having all of the windows tinted. However, because the vial containing cocaine was located in the defendant's sock, the additional privacy provided by the tinted windows seems rather insignificant. For that reason, as we stated at the beginning of this opinion, we believe this case presents the factual situation which the supreme court in *Buick* declined to address, namely, the State's assertion that the mere existence of a controlled sub-

stance on the person of a vehicle occupant subjects the vehicle to forfeiture.

In *People ex rel. Daley v. 1986 Honda, VIN JHMB-B7230GC040153* (1989), 182 Ill. App. 3d 322, 537 N.E.2d 1077, decided after *Buick*, the court considered a vehicle forfeiture action in which the driver of the vehicle in question possessed less than one gram of cocaine in her purse when her car was stopped. (*Honda*, 182 Ill. App. 3d at 324, 537 N.E.2d at 1078.) The trial court found the vehicle was not subject to forfeiture because the cocaine was concealed in the driver's purse and the vehicle did not facilitate the concealment or possession of the drug. (*Honda*, 182 Ill. App. 3d at 324, 537 N.E.2d at 1080.) Citing *Buick*, the appellate court reversed and wrote the following:

> "The words of the statute must be read in a reasonable, commonsense manner. [Citation.] Under the plain language of the forfeiture statute, [defendant] used her car 'to transport, or in any manner to facilitate,' possession of the cocaine, and then pled guilty to this 'violation of [the] Act.' Ill. Rev. Stat. 1987, ch. 56½, par. 1505(a)(3).
>
> The term 'facilitate' in section 505(a)(3) means to use the vehicle 'in any manner to make possession of the controlled substance easier or less difficult.' [Citation.] We find that the vehicle here was used to make possession of the cocaine easier. We note that the court in *People v. 1946 Buick* declined to address the issue of a vehicle occupant's mere possession of drugs on his person, because in *1946 Buick* the driver used the car to hide the cocaine from the police by emptying the packet of cocaine onto the car floor when stopped for a traffic violation. Similarly, [defendant] just as deliberately, and unsuccessfully, sought to intentionally conceal the drugs, not on her person, but within the car.
>
> We, of course, follow the holding of *People v. 1946 Buick*. We also adhere to the holding of this court in *People ex rel. Mihm v. Miller* (1980), 89 Ill. App. 3d 148, 411 N.E.2d 592. In the *Miller* case, forfeiture was ordered even where .08 grams of cocaine dropped accidentally from the driver's pocket as he stepped out of a car stopped for failing to heed a stop sign.
> \* \* \*
> \* \* \* [Defendant] was transporting the cocaine from her point of origin to her destination. A sufficient bond existed between the use of the car and the criminal offense. She smoked marijuana as she drove, carrying the cocaine in her purse and

more marijuana in the glove compartment. [Defendant] apparently believed the car provided her with a dimension of privacy which would permit her to use, possess and transport controlled substances on the public streets. The car was not so far removed from the crime charged to be unaffected by the illegal possession. [Citation.]

A person carrying drugs may use a car to be more elusive, move about at will, travel further, and escape observation, detection and capture. [Citation.] A car facilitates the transportation of even small quantities of controlled substances to a great degree when compared to the dangers faced when riding on public transportation or walking. One can arrive and depart quickly, and can make capture more difficult where, *e.g.*, the police have received a tip that the individual would be carrying illegal drugs." *Honda*, 182 Ill. App. 3d at 324-26, 537 N.E.2d at 1078-79.

Defendant in the present case attempts to distinguish *Honda* from his circumstances based on his claim that, in *Honda*, the defendant was concealing cocaine in her purse; in the present case, defendant concealed the cocaine in his sock. We do not find that distinction persuasive. We note that in both instances, the car provided essentially the same "dimension of privacy."

In *People ex rel. Mihm v. Miller* (1980), 89 Ill. App. 3d 148, 411 N.E.2d 592, the forfeiture case cited in *Honda*, the court wrote the following:

"While there may be some question as to whether an automobile facilitates the actual possession of a very small amount of a controlled substance which is carried on the person of the driver, to the extent the automobile adds a dimension of privacy, however, it does facilitate the possession." *Miller*, 89 Ill. App. 3d at 149-50, 411 N.E.2d at 593.

We acknowledge that defendant is correct in his argument that the court in *People ex rel. Barra v. Lee* (1984), 128 Ill. App. 3d 128, 470 N.E.2d 46, seemed to backtrack somewhat on the holding in *Miller*. In *Barra*, a search of the purse of the driver of a van revealed a small plastic bag containing several pills, which were later determined to contain a controlled substance. (*Barra*, 128 Ill. App. 3d at 129, 470 N.E.2d at 47.) The appellate court reversed the trial court's forfeiture order and distinguished *Miller* as follows:

"In *Miller* the contraband was located in the defendant's pocket. The contraband fell from the defendant's pocket, thus demonstrating that the defendant's pocket was neither a se-

cure nor a secret place. The vehicle in *Miller* thus afforded the defendant exclusive means of privacy. In the instant case, on the other hand, the contraband was completely concealed within a closed purse. Thus, the vehicle furnished no additional dimension of privacy. Accordingly, it strains the imagination to characterize the vehicle in question as facilitating the commission of this offense." *Barra*, 128 Ill. App. 3d at 130, 470 N.E.2d at 47.

In our judgment, *Honda*, which is in direct disagreement with *Barra* and which was written after the supreme court's *Buick* decision, is more consistent with *Buick*. Accordingly, we choose to follow the reasoning in *Honda* and hold that the trial court erred when it denied the State's petition for forfeiture of defendant's automobile.

While we acknowledge that this holding may seem harsh, we believe that it is required by the forfeiture provisions of the Act and the construction thereof by the supreme court in *Buick*. Requests to alleviate the harshness of this result should be addressed to the legislature, not to this court.

### III. STATE'S REQUEST TO FORFEIT THE CASH

The United States currency the State sought to forfeit was in defendant's wallet and was in close proximity to three different areas of the automobile where cocaine was found: (1) the vial in defendant's sock; (2) the white powdery residue containing cocaine found on the $2 bill in the wallet itself; and (3) the white powdery residue (found by a field test to be cocaine) in the straw located on the passenger side of the front floorboard. Section 505(a)(5) of the Act (Ill. Rev. Stat. 1989, ch. 56½, par. 1505(a)(5)) provides that "all moneys *** used, or intended to be used, to facilitate any violation of this Act" are subject to forfeiture. The trial court, as trier of fact, heard defendant's explanations regarding the money in question and could assign to those explanations whatever weight it saw fit. Apparently, the trial court was not impressed or persuaded by what it heard. This court will not reverse a trial court's determination regarding forfeiture when the trial court must determine the believability of the evidence unless we find the trial court's ruling to be against the manifest weight of the evidence. (See *People v. Strong* (1986), 151 Ill. App. 3d 28, 34, 502 N.E.2d 744, 748-49.) On this record, we think the evidence is sufficient for the trial court to have concluded that the State proved by a preponderance of the evidence the nexus between the forfeited property (the cash) and the contra-

band (the cocaine). Accordingly, the trial court's decision was not against the manifest weight of the evidence.

For the reasons stated, the judgment of the circuit court ordering the $990 forfeited to the State is affirmed; the judgment of the circuit court denying the State's petition to forfeit the defendant's automobile is reversed, and the cause is remanded with directions to enter the order of forfeiture.

Affirmed in part; reversed in part and remanded with directions.

LUND, P.J., and McCULLOUGH, J., concur.