Michael SCOTT, Plaintiff–Appellant,

v.

Marco GLUMAC, Defendant–Appellee.

No. 92–2432.

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1993.

Decided Aug. 6, 1993.

Kenneth N. Flaxman and Stacey L. Beckman, Chicago, IL, for plaintiff-appellant.

Richard T. Ryan and Mark F. Smolens, Flynn, Murphy & Ryan, Chicago, IL, for defendant-appellee.

Before POSNER and FLAUM, Circuit Judges, and RONEY, Senior Circuit Judge.[1]

15. Counsel for the local defendants stated at oral argument that they would not object to such a condition.

1. The Honorable Paul H. Roney, Senior Circuit Judge for the Eleventh Circuit, sitting by designation.

FLAUM, Circuit Judge.

Marco Glumac and three other Calumet City police officers arrested Michael Scott on October 4, 1989, pursuant to a "no-bond" arrest warrant issued by the Cook County Circuit Court for felony possession of a controlled substance. After the arrest, Officer Glumac searched Scott's car and ordered it towed. Scott filed a civil suit under 42 U.S.C. § 1983, alleging that his car had been wrongfully seized. The district court granted Glumac's motion for summary judgment based on qualified immunity, and Scott appeals. We reverse.

## I.

The facts are undisputed. Officer Glumac and his partner knew about the arrest warrant from Chicago and drove to Scott's residence. They watched him exit a 1982 Cadillac El Dorado, legally parked in the parking lot of his apartment complex. A male passenger remained in the car while Scott walked into the building. The officers called for additional police support. When two other officers arrived, all four approached the Cadillac and arrested the passenger. Then three of the four went to the front door of Scott's apartment, knocked and asked for Michael Scott. A voice responded that he would be right out. After three more minutes of knocking, the officers broke down the door and entered. They found Scott, wearing the same clothes he had been wearing when he entered the house, standing in the upstairs hallway.

Approximately twenty to twenty-five minutes had elapsed. The officers arrested Scott pursuant to the outstanding warrant. They searched him and recovered $541, a number of small zip-lock bags, and 0.1 gram of cocaine. Officer Glumac went back to the parking lot and searched the car, in which he found no contraband. He ordered the car towed. Scott's passenger was released without being charged by the police. The Cad-

illac fared less well; it was destroyed by the towing company.

## II.

We review the decision to grant summary judgment *de novo*. *Doe v. Allied Signal Corp.*, 925 F.2d 1007, 1008 (7th Cir. 1991). Because the doctrine of qualified immunity entitles officers to immunity from both civil liability and the burdens of litigation, it is important to resolve the immunity question at the earliest possible stage of the case. *Hunter v. Bryant*, —— U.S. ——, ——, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

Qualified immunity shields police officers "from suit for damages if 'a reasonable officer could have believed [the action] to be lawful, in light of clearly established law and the information the officers possessed.' " *Id.*, quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). The availability of immunity depends not on an officer's subjective good faith but rather on an objective reasonableness standard. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Frequently the general rule, such as the right to be free from unreasonable seizures, is well-established; the crucial question is whether the law was clear in relation to the specific facts confronting the police officer. *Maxwell v. City of Indianapolis*, 998 F.2d 431, 436 (7th Cir.1993). Scott must show that a reasonable officer in Officer Glumac's position could not have believed that probable cause existed to seize his car.

## III.

In Illinois, a police officer may seize a vehicle believed to have been used in the course of committing or attempting to commit a Controlled Substances Act violation. Such a vehicle is subject to forfeiture, under ILL.REV.STAT. ch. 56½, ¶ 1505(a)(3) (1991),[2] formerly under ILL.REV.STAT. ch. 38, ¶ 36 (1989).[3] When deciding whether a vehi-

---

**2.** "The following are subject to forfeiture: . . . all conveyances, including aircraft, vehicles or vessels, which are used, or intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, possession, or conceal-

ment of [substances in violation of the Illinois Controlled Substances Act]."

**3.** "Any vessel, vehicle or aircraft used with the knowledge and consent of the owner in the commission of, or in the attempt to commit . . ., an

cle is forfeitable, the primary focus is whether it facilitated the commission or attempted commission of the drug offense. *See People v. 1946 Buick*, 127 Ill.2d 374, 130 Ill.Dec. 419, 421, 537 N.E.2d 748, 750 (1989).

Illinois cases, including two recent Illinois Supreme Court cases, which neither party cited suggest that a reasonable officer could not believe Scott's car was subject to forfeiture. In *People v. 1988 Mercury Cougar*, 154 Ill.2d 27, 180 Ill.Dec. 323, 326, 607 N.E.2d 217, 220 (1992), the Illinois Supreme Court reaffirmed the key facilitation requirement under the forfeiture statute. Because a paraplegic driver who had been stopped for a traffic violation attempted to hide a packet containing 0.4 gram of cocaine as police officers approached his car, the court ordered his specially-equipped car forfeited. Citing its own earlier case, *People v. 1946 Buick*, 127 Ill.2d 374, 130 Ill.Dec. 419, 537 N.E.2d 748 (1989) as instructive, the court reasoned that the driver attempted to hide the cocaine under the carpet on the rear floor of the car, in order to retain possession of it. The car, therefore, had been used to attempt to commit a Controlled Substances Act violation.

In *1946 Buick*, police officers observed a driver who had been stopped for a moving violation emptying a packet onto the car floor as they approached. The police recovered 0.33 gram of cocaine from the floor of the car. The Illinois Supreme Court reversed the lower courts' order to release the car, but expressly reserved ruling on the question of whether mere possession while travelling in a car would subject the car to forfeiture. Instead, the Court found that more substantial evidence than simple possession was present: "Smith not only possessed the drug on his person while in the vehicle, but used the vehicle to hide the cocaine from the police." *Id.* 130 Ill.Dec. at 421, 537 N.E.2d at 750. "[T]he inescapable conclusion is that the vehicle was used, unsuccessfully in this case, to

make Smith's continued possession of the drug easier. Consequently, his vehicle is subject to forfeiture...." *Id.* Both of these cases emphasize the car's direct involvement in the Controlled Substances Act violation.

Other situations in which Illinois courts have found vehicles forfeitable include carrying drugs from the car to a point of sale, *see People v. One 1990 Chevrolet Suburban*, 239 Ill.App.3d 815, 178 Ill.Dec. 653, 605 N.E.2d 92 (2d Dist.1992); keeping a small quantity of drugs in the glove compartment of a vehicle, *see People v. One 1986 Ford Ranger Pickup*, 213 Ill.App.3d 1085, 157 Ill.Dec. 737, 572 N.E.2d 1201 (3d Dist.1991); and concealing a controlled substance in a bag while driving, *see People ex rel. Daley v. 1986 Honda*, 182 Ill.App.3d 322, 130 Ill.Dec. 748, 537 N.E.2d 1077 (1st Dist.1989) (car was "not so far removed from the crime charged to be unaffected by the illegal possession"). As one Illinois court explained, a vehicle facilitates the drug offense sufficiently to justify forfeiture when "[a] person carrying drugs [uses] a car to be more elusive, move about at will, travel further, and escape observation, detection and capture." *Id.* 130 Ill.Dec. at 750, 537 N.E.2d at 1079.

Even the Illinois cases cited as supportive authority by the defendant and the district court do not help establish probable cause to seize Scott's car. In *People ex rel. Carey v. 1975 Mercedes 4–Door*, 86 Ill.App.3d 893, 41 Ill.Dec. 955, 408 N.E.2d 377 (1st Dist.1989), the car owner removed a large quantity of drugs from the trunk of his car just prior to selling them to an undercover agent. The court found the car forfeitable because the "car was an integral, constituent part of the offense arising from the sale transaction." *Id.* 41 Ill.Dec. at 956, 408 N.E.2d at 378. In *People ex rel. Mihm v. Miller*, 89 Ill.App.3d 148, 44 Ill.Dec. 470, 411 N.E.2d 592 (3d Dist. 1980), the court held that "to the extent the automobile adds a dimension of privacy, ... it does facilitate the possession" of even a

offense prohibited by [the Illinois Controlled Substances Act] may be seized...." Paragraph 36–2 authorized forfeiture proceedings by the State's Attorney. The chapter 38 laws no longer cover violations of the Illinois Controlled Substances Act, as of September 10, 1990. Since this seizure took place in 1989, the district court used the chapter 38 statute. By then, however,

the Illinois Supreme Court had signalled the switch to using the chapter 56½ statute as authority for forfeitures. *See People v. 1946 Buick*, 127 Ill.2d 374, 130 Ill.Dec. 419, 421, 537 N.E.2d 748, 750 (1989). The distinction is mostly academic because the caselaw reflects no difference in the application of the statutes.

very small amount of a controlled substance. *Id.* 41 Ill.Dec. at 471, 411 N.E.2d at 593. In that case, which has been the source of some controversy among Illinois appellate courts,[4] the driver dropped from his pocket 0.08 gram of cocaine as he exited his car during a routine traffic stop. In both cases, there is a palpable connection between the vehicles seized and the drug offense, a connection not found between Scott's car and his possession of cocaine.

We know from the caselaw that if Scott had sold drugs from his car or had hidden them in his car, an arresting officer would have probable cause to seize the car. The law in Illinois is not clearly established in regard to a driver's possession of a concealed, small quantity of drugs while riding in a car. Reasonable officers could disagree about whether forfeiture is authorized in that situation. For the purposes of qualified immunity, uncertainty in the law protects as well as law that clearly authorizes the officer's action. In Scott's case, however, the officers discovered his Controlled Substances Act violation, his possession of cocaine, twenty to twenty-five minutes after he left his car. Officer Glumac has offered no evidence which would support a reasonable belief that Scott had been carrying the cocaine while he was in the car.

The defendant relies almost exclusively on one of our cases, *United States v. Pace*, 898 F.2d 1218 (7th Cir.1990), instead of Illinois law, to support his argument for qualified immunity. He argues that, as in *Pace*, it was reasonable to believe that the arrestee had driven the car to facilitate his Controlled Substances Act violation. We are not persuaded. In *Pace*, we affirmed the district court's decision not to suppress evidence stemming from the search and seizure of two cars owned by drug traffickers. The police executed a residential search warrant and discovered a multikilogram cocaine deal in progress. After arresting the homeowner and the guests, the police searched and seized the cars in the garage owned by the guests. Probable cause existed for the seizure under the federal and Illinois forfeiture statutes since it was reasonable to believe they had transported the guest-dealers to the point of sale. We found that "the police could reasonably believe that [the guests] used the cars to commit a violation of Illinois drug laws, [and therefore] the police had probable cause to believe the cars were subject to forfeiture." *Id.* at 1242. *Pace* does not help Officer Glumac, however, because Scott drove his car *home*, not to a drug transaction location. When the officers entered Scott's residence, there was no evidence of a drug transaction taking place; Scott was alone, with a very small amount of cocaine in his pocket.

At argument, counsel for Glumac offered a theory linking the car to the offense for the first time. He suggested that the police officers believed the car passenger to be Scott's customer, waiting for Scott to return to the car with cocaine. When Scott realized the police had arrived, counsel speculated, he flushed most of the drugs before the officers gained entry to the apartment. This argument does not suffice. The problem is not that the officer failed to articulate a reason for believing that Scott was using the car to commit a Controlled Substances Act violation. If we could tell from the record that a reasonable officer could have believed it, we would affirm the grant of qualified immunity, regardless of what Officer Glumac actually believed or what theory he argued. The real problem is that Glumac failed to offer evidence which could support a reasonable belief that the car was being used to commit a drug offense. There is nothing in the record—no evidence that Scott possessed the cocaine while he was in the car, no evidence that Scott was heading back to the car with

4. Since *Miller*, Illinois courts have struggled with the issue of whether mere possession of a small amount of a controlled substance inside a car constitutes facilitation. *Compare People ex rel. Kilquist v. One 1978 Mazda GLC*, 165 Ill.App.3d 540, 116 Ill.Dec. 307, 518 N.E.2d 1287 (5th Dist.1988) (shaving kit containing benzphetamine in unzipped duffle bag found in car, but no forfeiture because no facilitation) *and People ex rel. Barra v. Lee*, 128 Ill.App.3d 128, 83 Ill.Dec. 291, 470 N.E.2d 46 (3d Dist.1984) (van not forfeitable despite controlled substance found in closed purse of driver because the "vehicle furnished no additional dimension of privacy") *with People ex rel. Broch v. Hogg*, 213 Ill.App.3d 188, 156 Ill.Dec. 908, 571 N.E.2d 888 (4th Dist.1991) (the dimension of privacy, elusiveness, speed of departure, etc. offered by car facilitates possession of any quantity of drugs).

the cocaine, no evidence that Scott had purchased the cocaine from the passenger and was bringing it into the building—to tie the car to the offense.

If the police had arrested Scott as he alighted from his car and had found the cocaine on him, Glumac could have towed the car under *Miller* and the line of cases following it. If the officers had waited for Scott to return to the car and then arrested him in possession of cocaine, Glumac could have towed the car. Under either scenario, a reasonable officer could believe that the mere possession of the cocaine permitted forfeiture of the car. If the police saw the passenger exit the car and enter the building and then had interrupted a sale inside the apartment, Glumac could have towed the car. In that situation, as in *Pace*, a reasonable officer could believe that the car had been used as transportation incident to a drug deal. Instead, the officers arrested Scott in his own home twenty to twenty-five minutes after he had left his car. They found no evidence linking his possession of cocaine to the car, either through the search of the car or the car passenger.

We find that while the officers may have supposed that Scott either possessed the cocaine while he was in the car or was preparing to sell cocaine to the car passenger, that belief is closer to "mere suspicion" than probable cause. *See United States v. Certain Real Property*, 943 F.2d 721, 725 (7th Cir. 1991). If we were to affirm the grant of summary judgment based on qualified immunity in this case, we would be immunizing the seizure of a car based simply on ownership by an arrestee for drug possession. The Illinois statute cannot be reasonably interpreted to reach so far. At least minimal connection between the drug offense and the vehicle is needed. Here, a reasonable officer could not have believed that the car was subject to forfeiture under the Illinois statute, and therefore would not have found probable cause to seize the car. The judgment is

REVERSED.