THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. 1991 DODGE RAM CHARGER et al., Defendants (Richard Dietterich et al., Claimants-Appellants).

Second District   No. 2—92—0721

Opinion filed September 7, 1993.—Rehearing denied October 21, 1993.

Peter A. Savitski, of Rockford, for appellants.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Lisa Anne Hoffman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

The trial court ordered the forfeiture of a vehicle owned jointly by claimants Richard and David Dietterich pursuant to section 505(a)(3) of the Illinois Controlled Substances Act (Controlled Substances Act) (Ill. Rev. Stat. 1991, ch. 56½, par. 1505(a)(3) (now 720 ILCS 570/505(a)(3) (West 1992))). On appeal from the trial court's order, claimants argue that they were not responsible for, nor did they acquiesce in, the use of their vehicle to facilitate drug activity.

On February 5, 1992, the State filed a complaint for the forfeiture of a 1991 Dodge Ram Charger which was owned jointly by Richard Dietterich and his son David. The State also sued for the forfeiture of $264 in United States currency. The forfeiture hearing took place on April 16, 1992.

The following evidence was contained in the testimony of Officer Curtis Wilson of the Loves Park police department and in the police report of Officer C. Lynde of the Loves Park police department. At approximately 3:50 a.m. on January 4, 1992, Officer Lynde investigated a car alarm that had been activated in the parking lot of the Clayton House motel. Lynde observed a woman, Cheri Rucker, leaning against a gray Dodge Ram Charger in front of Room 26. A man, Henry Barbary, was standing nearby and another man, David Dietterich, was standing in the doorway of Room 26. Rucker informed Lynde that the alarm had been activated accidentally. Lynde left the scene. A few minutes later, a "concerned citizen" advised Lynde that he had interrupted a drug deal when he investigated the car alarm. Lynde called Wilson for assistance.

Wilson and Lynde parked across from the motel. They observed Rucker and Barbary enter the truck and drive out of the city limits. The officers did not pursue the truck. Sometime thereafter, they observed the truck returning to the parking lot. The officers made a traffic stop of the truck after Rucker, the driver, turned left into the parking lot without activating her turn signal. As the officers approached, they observed Rucker reach down toward the floor of the vehicle. Lynde saw Rucker put something into her mouth. After Rucker exited the truck, Lynde recovered a white plastic baggie, containing a white residue, from Rucker's mouth. Rucker also produced a clear plastic baggie containing a white powdery substance.

The officers then knocked on the door of Room 26 and spoke to David Dietterich. David stated that he knew that the subjects in the truck had possibly used the truck to purchase cocaine or heroin. David denied using drugs. He stated, however, that the driver of the vehicle was his girlfriend, and she had a serious drug problem. David consented to a search of the truck. The officers recovered from the center console of the truck a small amount of a substance which appeared to be cocaine and a syringe containing a red substance. David also consented to a search of Room 26. The officers recovered syringes, a scale, and a glass jar containing plastic baggie corners which are commonly used to package cocaine.

David later admitted in a written statement that he knew that Rucker and Barbary had taken the vehicle because they planned to purchase an "eight-ball" of cocaine. He further admitted in this statement that he had used his truck to drive Rucker to purchase cocaine during the previous few days. He also admitted that in the past he had given her money to purchase cocaine. On these occasions, she would consume a portion of the cocaine, sell the rest, and give him

the proceeds. After consulting with an assistant State's Attorney, Lynde seized and secured the truck.

Rucker made a written statement that she and Barbary used David Dietterich's truck to drive to Rockford to purchase an "eight-ball" of cocaine. She stated that Barbary actually purchased the cocaine and put it next to her in the truck. She also stated that David often either allowed her to use his truck to make drug purchases or drove her to the drug purchases.

The officers subsequently learned from an informant that there was cocaine remaining in the truck that they had not recovered. David consented to a second search of the truck. The officers found a substance, which later tested positive for cocaine, inside the truck. Wilson described the quantity of that cocaine as an "eight-ball," valued at between $400 and $800. The officers also recovered $264 from David. Other than the "eight-ball" recovered from the console, none of the substances that the officers recovered tested positive for cocaine. The substance that they recovered from Rucker turned out to be baking powder.

After the State rested, the trial court denied complainants' motion for a directed verdict. Claimants both testified for the defense.

Richard Dietterich, David's father, was 75 years old at the time of the hearing. Richard had paid for the truck with $22,000 from his savings. Richard testified that he did not know Rucker, he did not acquiesce in her use of the vehicle, and did not acquiesce in her use of the vehicle to transport cocaine.

David Dietterich testified that he had been with Rucker on the night of January 3, 1992, and they had gone to the motel. After taking a prescription for a sore back and Nyquil for a bad cold, he fell asleep. He later awoke and saw Rucker leaving the room. He then heard his truck's alarm go off. He looked outside and saw Rucker speaking with Barbary. He fell back to sleep and did not wake up until the police officers knocked on the door of his room.

David denied giving Rucker permission to use the truck that night. He knew nothing of the "eight-ball" that was recovered from the truck. He also claimed that none of the items that the officers found in the room belonged to him. He claimed that when he made the statements to police, he did not know what he was doing because he was groggy from the medication he had taken. David also claimed that he was not certain that Rucker had ever purchased cocaine when they were together.

The court ordered the forfeiture of the truck. The court found no basis for the forfeiture of the $264 and ordered that the money be re-

turned to David. The only issue on appeal is whether the trial court was correct in ordering the forfeiture of the truck.

Section 505(a)(3) of the Controlled Substances Act provides for the forfeiture of "all conveyances, including *** vehicles *** which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of" controlled substances. (Ill. Rev. Stat. 1991, ch. 56½, par. 1505(a)(3) (now 720 ILCS 570/505(a)(3) (West 1992)).) That section further provides, however, that "no conveyance is subject to forfeiture under this Section by reason of any act or omission which the owner proves to have been committed or omitted without his knowledge or consent." Ill. Rev. Stat. 1991, ch. 56½, par. 1505(a)(3)(ii) (now 720 ILCS 570/505(a)(3)(ii) (West 1992)).

Section 8 of the Drug Asset Forfeiture Procedure Act (Forfeiture Procedure Act), which applies to forfeitures under the Controlled Substances Act, provides that personal property is not subject to forfeiture if its owner can show by a preponderance of the evidence that he or she:

> "(A)(i) *** is not legally accountable for the conduct giving rise to the forfeiture, did not acquiesce in it, and did not know and could not reasonably have known of the conduct or that the conduct was likely to occur [and]
>
> * * *
>
> (C) with respect to conveyances, did not hold the property jointly or in common with a person whose conduct gave rise to the forfeiture." Ill. Rev. Stat. 1991, ch. 56½, pars. 1678(A)(i), (C) (now 725 ILCS 150/8(A)(i), (C) (West 1992)).

Forfeiture proceedings are civil in nature. (*People v. United States Currency $3,108* (1991), 219 Ill. App. 3d 441, 444; *People v. 1984 BMW 528E Automobile* (1991), 208 Ill. App. 3d 930, 936.) In order to secure the forfeiture of a vehicle under section 505(a)(3) of the Controlled Substances Act, the State must show by a preponderance of the evidence probable cause that the vehicle was used in the commission of an offense that violates the Act. *People ex rel. Daley v. 1986 Honda* (1989), 182 Ill. App. 3d 322, 324.

When a person places a controlled substance in a vehicle, that person uses the vehicle to facilitate the possession and concealment of a controlled substance, within the meaning of section 505(a)(3) of the Act. (*People v. One 1986 Ford Ranger Pickup Truck* (1991), 213 Ill. App. 3d 1085, 1088; *People ex rel. Broch v. Hogg* (1991), 213 Ill. App. 3d 188, 192-95.) This is so because a vehicle " 'adds a dimension of privacy' " to the illegal conduct involved. *People v. 1946 Buick* (1989),

127 Ill. 2d 374, 377, quoting *People ex rel. Mihm v. Miller* (1980), 89 Ill. App. 3d 148, 150; accord *People ex rel. Vandersnick v. One 1987 Dodge Charger Automobile* (1990), 193 Ill. App. 3d 547, 552.

The trial judge is in the best position to evaluate the testimony of the witnesses, and he or she is entitled to draw reasonable inferences from the evidence presented. (*People v. One 1980 Mercedes Automobile* (1988), 166 Ill. App. 3d 467, 470.) We will not disturb the trial judge's factual findings in a forfeiture proceeding unless they are against the manifest weight of the evidence. *People v. One 1990 Chevrolet Suburban* (1992), 239 Ill. App. 3d 815, 817.

The trial court's finding, that David Dietterich knew about, or consented to, an activity which subjected the truck to forfeiture, was not against the manifest weight of the evidence. The State presented evidence that David allowed both Rucker and Barbary to use his truck to drive to a location where they could purchase an "eight-ball" of cocaine and then return with the drugs to the motel. The officers recovered an "eight-ball" of cocaine from the console of the truck. The State further presented evidence that David had permitted Rucker to use the truck to purchase cocaine and that he had driven her on prior occasions to a place where she purchased cocaine. The trial judge apparently concluded from this evidence that, more probably than not, Rucker or Barbary used the truck to facilitate the transportation, possession, or concealment of cocaine. David failed to prove that he neither knew about, nor acquiesced in, the use of his truck for the facilitation of the possession, purchase, or concealment of cocaine.

Claimants argue that the fact that there were substances in the truck that appeared to be cocaine, but which did not test positive for cocaine, defeats the trial judge's conclusion. Claimants postulate that when David permitted Rucker to use the truck to purchase cocaine, she purchased a substance that was not cocaine. According to claimants, therefore, the actual "eight-ball" of cocaine could have found its way into the truck without David's knowledge or consent. Claimants presented no evidence, however, that the cocaine was put into the truck without David's knowledge or consent.

Claimants misunderstand the burden of proof under the forfeiture statute. Under section 8 of the Forfeiture Procedure Act, the property owner has the burden of proving, by a preponderance of the evidence, that his or her property is exempt from forfeiture. (Ill. Rev. Stat. 1991, ch. 56½, par. 1678 (now 725 ILCS 150/8 (West 1992)).) The State, therefore, need not prove that the exemptions do not apply in order to establish that it is entitled to the forfeiture of the property. Claimants cannot avoid the forfeiture of their property by sheer

speculation that the cocaine made its way into the truck without David's permission.

The evidence in this case, however, does not support the forfeiture of Richard Dietterich's interest in the truck. It is clear that Richard knew nothing about, nor had reason to know about, the use of the truck for any drug-related activity. The State never attempted to argue that Richard knew about, or acquiesced in, the drug activity that took place in the truck. The State argues, rather, that under section 8(C) of the Forfeiture Procedure Act, Richard's interest in the truck is subject to forfeiture because he owned the truck jointly with "a person whose conduct gave rise to the forfeiture." Ill. Rev. Stat. 1991, ch. 56½, par. 1678(C) (now 725 ILCS 150/8(C) (West 1992)).

In interpreting section 8(C) of the Forfeiture Procedure Act, we first note that it seems to conflict with section 505(a)(3)(ii) of the Controlled Substances Act. Under section 505(a)(3)(ii) of the Controlled Substances Act, a vehicle is not subject to forfeiture if its owner can prove that he or she did not know of, or consent to, the act or omission which triggered the forfeiture. (Ill. Rev. Stat. 1991, ch. 56½, par. 1505(a)(3)(ii) (now 720 ILCS 570/505(a)(3)(ii) (West 1992)).) For property to be exempt from forfeiture under section 8 of the Forfeiture Procedure Act, on the other hand, the owner must not only show that he or she did not acquiesce in, or know about, the conduct giving rise to the forfeiture. He or she must also satisfy other conditions, including the condition found in section 8(C) that he or she did not own the property jointly with a person whose conduct gave rise to the forfeiture. Ill. Rev. Stat. 1991, ch. 56½, par. 1678 (now 725 ILCS 150/8 (West 1992)).

We see no way to read these two provisions so that they are harmonious. (See *Williams v. Illinois State Scholarship Comm'n* (1990), 139 Ill. 2d 24, 52.) Nor do we conclude that one provision applies because it is the more specific. (See *Hernon v. E.W. Corrigan Construction Co.* (1992), 149 Ill. 2d 190, 195.) However, section 8 of the Forfeiture Procedure Act is the legislature's most recent pronouncement on the issue. As such, we determine that it controls. See *People v. Bailey* (1983), 116 Ill. App. 3d 259, 264; 2B N. Singer, Sutherland on Statutory Construction §51.02 (5th ed. 1992).

We now construe section 8 of the Forfeiture Procedure Act. Under that section, an innocent owner of a conveyance cannot defeat its forfeiture if he or she owns the conveyance jointly with a person whose *conduct* gave rise to the forfeiture. Section 8(A)(i) of the Forfeiture Procedure Act uses the word "conduct" to refer to the illegal activity itself, not the acquiescence in, or knowledge of, that activity.

In this case, the evidence established that the conduct giving rise to the forfeiture occurred when either Rucker or Barbary placed the cocaine in the truck and then used the truck to conceal and transport the cocaine. The State did not prove that David himself ever placed cocaine in the truck, or that he used the truck to transport or conceal cocaine. Because David permitted Rucker and Barbary to use the truck to purchase cocaine, his behavior prevented his property from being exempt from forfeiture under section 505(a)(3)(ii) of the Controlled Substances Act and under section 8(A)(i) of the Forfeiture Procedure Act. However, David himself did not engage in conduct which gave rise to the forfeiture, at least as the term "conduct" is used in section 8(A)(i) of the Forfeiture Procedure Act. Because Richard owns the truck jointly with David, rather than with Rucker or Barbary, Richard can qualify as an innocent owner whose property is exempt from forfeiture under section 8(A)(i) of the Forfeiture Procedure Act.

Furthermore, even if we found an ambiguity as to whether "conduct" in section 8(C) of the Forfeiture Procedure Act applied to David's actions, we would still conclude that section 8(C) did not prevent Richard from being an innocent owner. The law generally disfavors forfeitures, and statutes authorizing them must be strictly construed in favor of the property owner. (*United States Currency $3,108*, 219 Ill. App. 3d at 446.) Construing any ambiguity in the word "conduct" in Richard's favor would lead us to conclude that Richard did not own the property jointly with a person whose conduct gave rise to the forfeiture.

In addition, because we presume that the legislature intended an interpretation that renders the statute valid, we interpret statutes, where possible, so that they are constitutional. (*Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund* (1993), 155 Ill. 2d 103, 110.) The United States Supreme Court recently held that criminal forfeitures constitute punishments which are subject to the limitations of the eighth amendment's excessive fines clause. (*Austin v. United States* (1993), 509 U.S. ___, ___, 125 L. Ed. 2d 488, 494, 113 S. Ct. 2801, 2803.) In light of *Austin*, we seriously doubt whether it would be constitutional to require Richard to forfeit a truck whose value exceeds $20,000 when he was completely innocent of any criminal activity and his co-owner did not himself engage in criminal activity.

Because section 8(C) of the Forfeiture Procedure Act does not prevent Richard from claiming that the truck was exempt from forfeiture, Richard, as an innocent co-owner of the truck, can avoid its forfeiture. (See *People ex rel. Barra v. Wiebler* (1984), 127 Ill. App.

3d 488, 491-92 (interpreting a similar forfeiture provision).) The resolution of whether section 8(C) of the Forfeiture Procedure Act prevented Richard from avoiding the forfeiture of his truck turned on the interpretation of the statute rather than on a question of fact. Thus, we reverse the trial court's finding as a matter of law. *1946 Buick*, 127 Ill. 2d at 378.

We reverse that portion of the order of the circuit court of Winnebago County requiring forfeiture of the truck.

Reversed.

UNVERZAGT and WOODWARD, JJ., concur.