THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ONE 1982 MAROON FORD MUSTANG, VIN 1FABP10B0CF213758, Defendant (John Kimery, Claimant-Appellant).

Second District    No. 2—92—0934

Opinion filed February 22, 1994.

Fred M. Morelli, Jr., of Law Offices of Morelli & Cook, of Aurora, and Vincent C. Argento and Jesse V. Barrientes, both of Law Offices of Vincent C. Argento, of Elgin, for appellant.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers and Lisa A. Hoffman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

John Kimery (claimant) appeals a trial court order forfeiting his 1982 Ford Mustang pursuant to the Drug Asset Forfeiture Procedure Act (the Act) (725 ILCS 150/1 *et seq.* (West 1992)). Claimant argues on appeal that: (1) the trial court erred in allowing a police officer who was involved in seizing claimant's car to testify as an expert witness, as the State violated Supreme Court Rule 220 (134 Ill. 2d R. 220) by failing to disclose before trial that the officer would be testifying as an expert; (2) the trial court erred in finding that claimant's car was subject to forfeiture; (3) the case was not tried within the statutory time limit; and (4) the Act violates claimant's right to a jury trial in a civil case (see U.S. Const., amend. VII; Ill. Const. 1970, art. I, § 13). We affirm.

On November 18, 1991, the State filed a complaint for forfeiture alleging that, on October 6, 1991, the vehicle at issue was used to facilitate a cocaine transaction in Aurora. On February 4, 1992,

claimant filed his second amended answer to the complaint. He stated that he was the owner of the Mustang. He denied that the car was used in a drug transaction.

On February 13, 1992, the cause was continued, on the parties' motion, to April 14, 1992. On April 6, 1992, the State moved to strike the trial date because one of its witnesses, Officer Mike Langston, would not be available to testify on April 14. Over claimant's objection, the trial court granted the motion. The cause proceeded to a bench trial on May 26, 1992.

The State's first witness was Aurora police officer Thomas Kearbey, who was part of a team assigned to a drug detail on Kane Street on October 6, 1991. Also participating were Officers Langston, Carter, Edwards, Rigg, and Sanchez. Officer Langston was doing a survey of drug activity on the 1100 block of Kane Street; the other officers were parked outside the area. At about 9:45 p.m., Langston called the other officers into the area. Kearbey pulled up behind the Mustang. Edwards removed claimant (the driver) and Larry Harris (the passenger) from the Mustang.

Officer Edwards patted down claimant and found nothing on claimant's person. However, he noticed a hole in claimant's pants pocket. Officer Carter found a small plastic bag by claimant's foot. Carter gave Kearbey the plastic bag. When Kearbey returned to the police station, he gave the bag to Officer Langston, who field-tested the contents.

Officer Langston testified that in his 10 years with the Aurora police department, he had been involved in about 100 narcotics-related arrests. He was familiar with the appearance of cocaine and how cocaine was packaged for sale. He had seen people ingest cocaine many times. Langston had special police training in narcotics investigation, including administration of field tests. He had used the Scott Reagent Field Test about 50 times; each time, lab tests confirmed the result of this test.

On October 6, 1991, Langston headed up the plainclothes investigation of the 1100 block of Kane Street. Kane Street is a two-lane, east-west road. It has sidewalks on both sides, and there are streetlights about every 75 to 80 yards. On the north side of Kane are apartment buildings, houses, and a lodge. At about 9:15 p.m., Langston took his post on the roof of a duplex at 1119 Kane. He was about 14 feet above the ground and 35 feet from the south curb. There was a streetlight about 20 feet from him.

At 9:40 p.m., Langston, using binoculars, saw a 1982 Ford Mustang occupied by claimant drive slowly west through the 1100 block of Kane. The car went past Langston, turned around in a

driveway, and came back east on Kane. The car soon turned south onto Loucks, north on Trask and east on Kane, stopping along the south curb directly in front of 1119 Kane. Officer Langston was about 30 or 35 feet away. Langston looked through the passenger's window and saw the driver. A short time later, a man who had been in front of 1115 Kane walked up to the car and spoke to claimant. After a few more minutes, a man Langston recognized as Larry Harris walked into the area. Claimant gave a hand signal. Harris approached the car and spoke with claimant.

Langston heard Harris tell claimant Harris could possibly get claimant "a sixteenth." Harris walked away and met with the first man, who had just pulled up in a Buick. The two men entered the house at 1115 Kane. The first man stayed inside. After five minutes, Harris exited and walked to the passenger side of claimant's car. Claimant unlocked the door and Harris got in. After about a minute, Harris gave claimant what appeared to be a small white bag. Claimant untied the bag, appeared to remove something, and retied the bag. He reached inside his jacket and removed something, then brought his hands together and raised them up to his face.

After Langston disclosed this information on direct examination, the prosecutor asked him if claimant's actions were consistent with the possible ingestion of cocaine. Claimant's attorney objected, arguing that Langston had not been qualified as an expert witness. After the court overruled the objection, claimant's counsel argued that Langston's expert testimony should be barred because the State had not disclosed the expert witness as required by Rule 220. The court overruled the objection.

Langston then testified that after he saw claimant hand Harris what appeared to be paper money, Langston signaled the other officers to arrest claimant and Harris. After the men were arrested and the officers returned to the police station, Officer Kearbey gave Langston the plastic bag claimant had taken from Harris. Langston field-tested the substance in the package; it tested positive for cocaine. Langston acknowledged the field test he performed was "non-specific," that is, the test proved only that the substance in the bag could be cocaine. The test alone could not conclusively demonstrate that the substance was cocaine rather than one of an unknown number of other substances (not necessarily illegal) that might produce similar results.

Claimant testified in opposition to the State's complaint for forfeiture. Claimant acknowledged that he owned the car and that he was the driver whom the police encountered on the evening of October 6, 1991. He testified that, before the encounter, he had driven

to Aurora from Naperville to visit a friend. When he came to the southwest corner of the intersection of Loucks and Kane, a man who had been standing by a house on the other side of Kane ran to his car. Claimant asked the man if the latter had seen claimant's friend. The man responded affirmatively and told claimant to drive to 1119 Kane, where the man would go get claimant's friend. Claimant parked in front of 1119 Kane. Soon, another man (a stranger) drove up and walked to the driver's side of claimant's car. After claimant told the man that claimant was waiting for a friend, the stranger went away.

About a minute later, another person walked south across Kane Street. Claimant motioned him over to the car. The man asked claimant for a ride to Kentucky Fried Chicken. Claimant agreed. The man entered a building and came back a minute later; he asked for a cigarette, and claimant supplied one from his shirt pocket. As claimant started the Mustang, the police cars blocked him in. An officer searched claimant and his passenger, Larry Harris. Officer Carter picked up a small baggie from the ground. Claimant and Harris were arrested.

Claimant testified that he had never seen the baggie before Officer Carter picked it up and that he had no idea of its contents. He stated that he never gave Harris any money and that Harris never gave him a white package.

The trial court found in the State's favor and ordered the vehicle forfeited. After the trial court denied claimant's post-trial motion, he appealed.

■ Claimant argues first that the State should not have been allowed to introduce Officer Langston's expert testimony that the substance seized during the arrest was cocaine. Claimant argues that by failing to disclose before trial that Langston would testify as an expert, the State violated Supreme Court Rule 220. We disagree.

As relevant here, Rule 220 requires that, no later than 60 days before trial, a party must disclose the identity of an expert "who is retained to render an opinion at trial" on behalf of that party. (134 Ill. 2d R. 220(b)(1).) We agree with the State that the police officer who directed and participated in the arrest of claimant and the seizure of claimant's car was not a "retained" expert as that term has been defined under Rule 220.

Dispositive is *Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1992), 154 Ill. 2d 543, which holds that a party need not disclose the identity of an expert who was "intimately involved in the underlying facts giving rise to the litigation and *** would reasonably be expected to form an opinion through that involvement."

(*Wakeford,* 154 Ill. 2d at 549.) The court reasoned that Rule 220's disclosure requirement is intended to avoid the unfair surprise likely where the expert had only a slight connection with the case or where the expert's opinion is unrelated to his involvement in the case. *Wakeford,* 154 Ill. 2d at 549.

*Wakeford* barred the expert testimony of a police officer who made an after-the-fact investigation of an assault. The officer gave expert opinions on whether the defendant's hotel was located in a high-crime area and whether the defendant should have posted a security guard on the premises. The supreme court concluded that, absent any Rule 220 disclosure, the officer could testify about the facts he uncovered via his investigation, but that he could not give expert opinions on the need for security in the area, as this matter was unrelated to his investigation. *Wakeford,* 154 Ill. 2d at 549.

Under *Wakeford,* Rule 220 did not require the State to disclose the identity of its expert, Langston. The officer's involvement in the case could scarcely have been greater than it was, and claimant could not reasonably claim that he would be unfairly surprised if one of the arresting officers testified about whether the substance seized was cocaine. Langston's expert testimony was intimately connected with his role in the case. Thus, claimant's first contention of error lacks merit.

■ Claimant makes three further allegations of error, all of which we may dispose of without extended comment. Claimant alleges that the trial court's determination that claimant's car was subject to forfeiture as an instrumentality of a drug offense was against the manifest weight of the evidence. We disagree.

Because the trial judge is best suited to evaluate the testimony and to draw reasonable inferences therefrom, we will not reverse a finding of forfeiture unless it is against the manifest weight of the evidence. (*People v. 1991 Dodge Ram Charger* (1993), 250 Ill. App. 3d 810, 814; *People ex rel. Waller v. $4,175.00 United States Currency* (1993), 239 Ill. App. 3d 857, 861.) The State was required to show probable cause for the forfeiture of claimant's car. (725 ILCS 150/9(G) (West 1992).) Although claimant attacks the reliability of Officer Langston's field test, we believe that the testimony regarding the test's high success rate was adequate to establish probable cause. Moreover, even aside from the test, there was considerable evidence that claimant used the car to facilitate a drug transaction. Langston's observations of claimant's activities and of the dealings between Harris and claimant provided strong evidence that claimant was buying and testing cocaine.

■ Claimant argues next that the judgment must be reversed

because the trial was not held within 60 days after claimant filed his answer. Claimant ignores that, under the Act, the hearing must be held within 60 days of the answer "unless continued for good cause." (725 ILCS 150/9(F) (West 1992).) In denying claimant's post-trial motion, the trial court specifically found that any continuances were for good cause. Claimant cites neither the record nor any authority to persuade us that this finding was erroneous.

■ Finally, claimant argues that the Act violated his Federal and State rights to a jury trial in a civil case by requiring that the hearing be held without a jury. (See 725 ILCS 150/9(F) (West 1992).) We choose not to reach the merits of this issue, as claimant, by his actions, waived any right he may have had to a jury trial. Claimant never demanded a jury trial and raised the issue for the first time in a single line in his post-trial motion. A party who does not timely demand a jury trial and acquiesces in a bench trial waives any right to a jury trial. 735 ILCS 5/2—1105 (West 1992); *Bevins v. Comet Casualty Co.* (1979), 71 Ill. App. 3d 758, 766; *Power Electric Contractors, Inc. v. Maywood-Proviso State Bank* (1978), 60 Ill. App. 3d 685, 690-91.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

GEIGER and BOWMAN, JJ., concur.