THE PEOPLE *ex rel.* JOSEPH E. BIRKETT, State's Attorney of Du Page County, Illinois, Plaintiff-Appellee, v. 1998 CHEVROLET CORVETTE, VIN 1G1YY22G2W5108366, Defendant (Robert Doyle, Claimant-Appellant).

Second District   No. 2—01—0818

Opinion filed June 20, 2002.

Michelle L. Moore, of Law Office of Michelle L. Moore, of Oak Brook, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Joan M. Kripke, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellee.

JUSTICE CALLUM delivered the opinion of the court:

The State filed a verified complaint seeking the forfeiture of a 1998 Chevrolet Corvette, VIN 1G1YY22G2W5108366. The complaint alleged that the Corvette was subject to forfeiture pursuant to section 505(a)(3) of the Illinois Controlled Substances Act (Substances Act) (720 ILCS 570/505(a)(3) (West 2000)) and the provisions of the Drug Asset Forfeiture Procedure Act (Forfeiture Act) (725 ILCS 150/1 *et seq.* (West 2000)). The complaint alleged that the car was used or was intended to be used to facilitate a violation of the Substances Act and was seized from Dina M. Doyle on August 28, 2000. Claimant, Robert Doyle (Robert or claimant), filed a verified claim asserting that he was an innocent owner of the Corvette and that it was not forfeitable as neither he nor Dina Doyle, who was alleged to have an interest in the car, was involved in any illegal action making it subject to forfeiture.

Following a bench trial, the trial court found that Dina Doyle was the owner of the Corvette within the meaning of the Forfeiture Act and ordered the forfeiture of the car to the State as provided by law.

Claimant appeals, arguing essentially that (1) the State's evidence was insufficient to prove that the use of the car (in connection with a drug offense) by a third party (Michael Mohr) was more than mere "incidental use" of the car; (2) the car did not "facilitate" a violation of the Substances Act; and (3) the trial court erred in ordering the forfeiture of claimant's interest in the car as he was a co-owner of the car and did not know of, acquiesce in, or consent to a third party's conduct that gave rise to the forfeiture. We affirm.

At the trial, the parties stipulated that, if Officer Mario Mineo were called to testify, he would testify essentially as follows. On August 28, 2000, Mineo was a Glendale Heights police officer. He assisted in the arrest of Dina Doyle on an outstanding warrant. Upon his arrival at 139 E. Montana, Mineo observed Dina standing at the rear of a white 1998 Corvette, with the rear hatch open. A second person known to Mineo as Michael Mohr was sitting in the driver's seat with the door closed. Mohr was leaning over the center console with his hands toward the passenger side of the car. Mineo asked Mohr to exit the car and, as he did, Mineo could see that Mohr was sweating and shaking. Mineo looked into the passenger side of the car and saw a small tinfoil package lying on the floor of the passenger side. Mineo knew that heroin is commonly packaged in tinfoil. He retrieved the package and opened it, finding a white powdery substance that later tested positive for the presence of heroin. Mohr had previously told Mineo that he used heroin.

When Mineo told Mohr and Dina what he had found, Dina stated, without being questioned, that the heroin was Mohr's and that she knew that he also had a needle in the car. Mohr denied knowledge of the heroin at that time. Later, Mohr told Mineo that the heroin was Dina's and that he had done heroin earlier that day. Mohr was charged with possession of a controlled substance for the heroin found in the Corvette on August 28, 2000. Dina was not charged.

Officer Mineo had also arrested Dina on August 13, 1999. On that day Mineo stopped the 1998 Corvette. Mohr was the driver. Mohr was arrested for driving with a revoked license, and Dina was arrested for possession of heroin. Dina had two Baggies in her purse; one had a white powdery substance and one had white residue. Dina admitted that the substance was heroin. Dina pleaded guilty to that offense and the case (No. 99—CF—2017) was still open. Mineo also reviewed Glendale Heights police report No. 9917213, which contained facts regarding Dina's arrest for having no valid driver's license. On December 2, 1999, Dina was again stopped while driving the Corvette and was arrested for not having a valid driver's license. At the time of the arrest, Dina's purse was searched, and Officer Lambert located a

rolled-up dollar bill with white powdery residue on it. That substance later tested positive for heroin. That case (No. 00—CF—2198) was still pending.

During Mineo's arrests of Dina, he saw in the car women's clothing consistent with what he knew to be Dina's employment at the time. Mineo also had prior noncustodial contacts with Dina while she was in the Corvette and on those occasions the vehicle contained women's clothing.

Garry Harrison, deputy chief of police of Glendale Heights, testified that, in connection with the investigation in August 2000, he obtained documents pertaining to the purchase of the car, and he testified regarding their content. The parties stipulated to the admission of these documents as business records generated at the time of sale, July 29, 1999. Exhibit No. 1 is a bill of sale for the Corvette from Woodfield Chevrolet, showing the total purchase price ($36,097.58), the down payment ($15,000), and the balance due. At the bottom is the signature of the buyer, "Robert Doyle," and the co-buyer, "Dina Marie Doyle." Exhibit No. 2 is a warranty buyer's guide signed by "Dina M. Doyle." Exhibit No. 3 is a "We-Owe" statement that the seller owed nothing to the customer and it has the signature of "Dina M. Doyle." Exhibit No. 4 is a "GM Resale Disclosure Notice of Nonconformity" with the signature of "Robert Doyle" as consumer and that of "Dina M. Doyle," which is crossed out. Exhibit No. 5 is a credit application signed "Dina Marie Doyle." Exhibit No. 6 is a La Salle Bank truth-in-lending disclosure form signed "Robert Doyle" and "Phyllis Doyle." Exhibit No. 7 is a $15,000 down payment check made out to Woodfield Chevrolet in the amount of $15,000 and signed "Dina Marie Doyle." Dina M. Doyle's name and address are printed on the check. Harrison testified that the signatures for Dina Doyle all appear to have been made by the same person.

Harrison interviewed Robert and Phyllis Doyle on August 31, 2000. Harrison asked Robert about a previous arrest of Dina in 1999 for a drug violation and the extent of his knowledge of Dina's drug use. Robert was aware of the August 1999 arrest. Robert was aware that in the 1999 arrest Dina blamed the possession of the drugs on Mohr. Robert had found a court order in connection with the arrest, ordering his daughter Dina into rehabilitation, which Robert and his wife had set up for her. Robert learned of Dina's and Michael's drug use at that time. Robert stated that the Corvette was in his name, as were all the vehicles at the house, and the insurance was in his name. Robert said that Dina made the payments on the Corvette, and she was the primary driver of the Corvette, but he had made a few payments when Dina did not have the money. Robert said he had driven

the car occasionally, but he did not like to drive it because it was too hard to get in and out of and it was "too fast."

Harrison asked Phyllis Doyle about her daughter Dina's drug use. She knew of Mohr's drug problem and was beginning to think that Dina was involved in drugs. Phyllis said that the car belonged to Robert and that Dina saved her money and made the down payment and the monthly payments, but the car was in Robert's name because of Dina's credit and employment history. She said Dina was the primary driver of the Corvette except when she was unable to make the monthly payments.

Harrison further testified that Phyllis told him that Robert threatened to sell the Corvette and throw Dina out of the house. He also recalled Robert saying he was going to sell the car and move to Florida. The first statement was made in reference to a 1999 arrest, and the second was made in reference to the most recent arrest in 2000. Phyllis told him she knew that after the first 1999 arrest a seizure of the car was possible. Harrison explained that, after the first arrest, Mineo wanted to seize the car but explained to Phyllis that the vehicle was not going to be seized because, at that time, too much money was owed on it.

After the State rested, Robert Doyle testified that he was 62 years old, that his daughter was Dina Doyle, and that he was married to Phyllis Doyle. He had a 40-year-old daughter and a 22-year-old son. Robert said he had previously purchased a 1995 Corvette but it was "totaled" by his son in July 1999. It was stipulated that Robert received a check from the insurance company for the loss in the amount of $17,070.09. The insurance company had paid out a partial initial check in the amount of $9,322.41 that was placed into a savings account with his daughter at West Suburban Bank. He also had a joint checking account with Dina at St. Paul.

Dina went with Robert to purchase the 1998 Corvette at Woodfield Chevrolet. After agreeing on the purchase, Robert told Dina to write out a check for the down payment from their joint checking account because she had her check with her. She had her own checks without Robert's name on them. Robert paid for the insurance on both Corvettes. He had the authority to say who could use the car and when. He stated he had barred Dina from using the car many times. His son, Leon, used the car many times.

Robert testified that, on the day the 1998 Corvette was seized, he had not given Mohr permission to go inside the car and did not know that Mohr had drugs on him. Robert made payments on the car. Dina also made some payments when Robert gave her the money. His son also made payments when Robert gave him the money. Robert had

told Harrison that they all made payments on the car as there were times when Robert could not make it to the bank. Robert admitted that he told Dina, his wife, and the police that he was going to sell the car because of what was going on. The loan for the car at La Salle Bank was in the name of Robert and Phyllis, and the bank was demanding payment from Robert. Robert claimed that the Corvettes were used as family cars.

On cross-examination, Robert further testified that he owned four "family" cars and any of the family members could drive any of the cars. His son had a 1996 Lincoln Continental, which Phyllis and Robert also drove, but it was in Robert's name. Robert also had a Beretta that he and his wife drove. All the family drivers were listed on the insurance policy that Robert maintained.

Robert explained that Dina went to pick out the Corvette with him because he needed a licensed driver to drive it home. He did not know what Dina's credit was like as he never asked her, but she had accounts with department stores, so he surmised she must have had some credit. She never had a car titled in her name. Robert denied that Dina was a "co-buyer." When asked to explain why Dina signed her name as co-buyer on exhibit No. 1, Robert explained that she would then be entitled to drive the car home under the insurance policy. He insisted that he, not Dina, bought the car. He acknowledged that Dina wrote the check for $15,000 on their joint account but he did not have his checkbook with him that day, as it did not occur to him that he might need his checkbook to buy a car.

Robert admitted that on August 13, 1999, when Mohr and Dina were arrested for possession of heroin, Robert knew then or shortly thereafter that Mohr was a drug user. He was upset and threatened to take the car away from Dina "[t]hat time and times before that also." Robert stated that he had been handicapped for 10 years and walked with a cane, and it was "pretty tough" for him to get in and out of the Corvette. When asked why Dina signed the papers at the dealership, Robert first stated it was because the office was on the second floor and there was no elevator. He then explained that, although he could have gone to the second floor, it did not seem to be "that big of a thing for her to go up and sign as me."

The trial court found that the State had met its burden of showing that Dina was the owner of the Corvette within the meaning of the statute, despite the casual use of the vehicle by others and the title in Robert's name. The court found by a preponderance of the evidence that the vehicle was used to facilitate Mohr's possessory drug offense, and the car was ordered forfeited.

In denying Robert's motion to reconsider, the court explained that

a number of factors supported its finding that Dina was "the owner" of the Corvette. Dina signed most of the documents at the time of the purchase; she was seen driving the car on numerous occasions; she was the subject of two prior arrests for possession of heroin while in the vehicle; many aspects of Robert's testimony were either incredible or improbable; and the court observed Robert's demeanor and determined that he would have had difficulty getting in and out of the car. Additionally, Dina had written the check, and there was testimony that she made payments on the vehicle. The court concluded that Robert was merely the holder of "naked title" to the car. The court also determined that the car provided a dimension of privacy that facilitated the use or possession of a controlled substance.

■ Because the trial court is best suited to evaluate the testimony of the witnesses and to draw reasonable inferences from the evidence, this court will not reverse an order of forfeiture unless the trial court's decision is against the manifest weight of the evidence. See *People v. One 1982 Maroon Ford Mustang*, 258 Ill. App. 3d 127, 132 (1994). We must consider whether the Corvette was "used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of" a controlled substance pursuant to section 505(a)(3) of the Substances Act (720 ILCS 570/505(a)(3) (West 2000)). We must consider first whether the State sufficiently showed the existence of probable cause for the forfeiture of the car. Next, we consider whether the trial court properly found that Dina was the owner of the car for statutory purposes and whether Robert failed to prove his innocent owner defense by a preponderance of the evidence.

■ In an effort to deter drug offenses, the Forfeiture Act, which took effect in 1990, sets out uniform procedures for the seizure and forfeiture of property under the Substances Act. The Forfeiture Act is to be liberally construed to effectuate its remedial purpose (725 ILCS 150/13 (West 2000)). *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 326 (1997); *People v. $52,204.00 United States Currency*, 252 Ill. App. 3d 778, 782 (1993). With respect to a forfeiture proceeding, the Forfeiture Act controls over the Substances Act.

■ We first state the burden of proof in this proceeding under the Forfeiture Act. This Act provides that the State shall have the initial burden to "show the existence of probable cause for forfeiture of the property." 725 ILCS 150/9 (G) (West 2000); *Astro Van*, 177 Ill. 2d at 326. Where the State satisfies its burden of establishing probable cause, then the burden shifts to the *claimant* to show by a preponderance of the evidence that the property is not subject to forfeiture. 725

ILCS 150/9(G) (West 2000); *People v. 1515 Coolidge Avenue*, 308 Ill. App. 3d 805, 810 (1999). During the State's probable cause portion of the proceeding, "the court must receive and consider, among other things, all relevant hearsay evidence and information" (725 ILCS 150/9(B) (West 2000)), whereas during all other portions of the proceeding, the law of evidence related to civil actions applies (725 ILCS 150/9(B) (West 2000)). *Astro Van*, 177 Ill. 2d at 326-27. The trial court may rely on circumstantial evidence to assist in establishing probable cause to support the forfeiture of the property. *$52,204.00*, 252 Ill. App. 3d at 782.

■ In *People v. 1946 Buick*, 127 Ill. 2d 374 (1989), the court considered the meaning of an earlier but similar version of section 505(a)(3) of the Substances Act, which provided that a vehicle is subject to forfeiture if it is used or intended for use "in any manner to facilitate any violation of this Act." Ill. Rev. Stat. 1985, ch. 56½, par. 1505(a)(3) (now codified, as amended, at 720 ILCS 570/505(a)(3) (West 2000)). According to the supreme court, to "facilitate" is to make possession of the controlled substance easier. *1946 Buick*, 127 Ill. 2d at 377. In *1946 Buick*, the owner emptied a packet of cocaine onto the floor of his vehicle in order to hide it—unsuccessfully—from the view of the police. The court noted that the claimant not only possessed the drug on his person but also used the vehicle to hide the cocaine from the police. The court concluded that the vehicle was used unsuccessfully to make the offender's continued possession of the drug easier, and the vehicle was thus subject to forfeiture.

In *People v. 1988 Mercury Cougar*, 154 Ill. 2d 27 (1992) (holding reinstated by *In re P.S.*, 175 Ill. 2d 79, 91 (1997)), the supreme court found, as in *1946 Buick*, that the driver's attempt to hide a small amount of a drug (0.4 of a gram of cocaine) under a piece of carpeting on the floor of the car showed that the driver "clearly intended to use" his car to make his possession of cocaine easier by preventing the police from finding the cocaine, and the court concluded that the car facilitated his possession and was subject to forfeiture. *Mercury Cougar*, 154 Ill. 2d at 32-33.

■ Similarly, in this case, the clear inference from the facts is that Mohr attempted to ditch the heroin by placing it on the floor on the other side of the car with the intent to make his possession easier and thus the car facilitated his possession of the drug. Mohr's conduct rendered the car subject to forfeiture, and the State met its initial burden of showing probable cause for the forfeiture. Under the controlling cases cited, it is irrelevant that Mohr was unsuccessful. Furthermore, because Mohr did not possess the drug on his person, the cases claimant cites regarding incidental possession of a drug on one's person or in a carrying bag or purse are inapplicable here.

We next consider in tandem whether the trial court properly found that Dina, rather than Robert, was the owner of the car for purposes of the forfeiture provisions and whether Robert failed to prove his innocent owner defense by a preponderance of the evidence. We agree with the trial court and conclude that Dina was "the owner."

In *People v. Dugan*, 125 Ill. App. 3d 820 (1984), the State brought a civil forfeiture action against a Cadillac. Robert F. Dugan provided funds for the purchase of the car, but the title was held by Sandra Martinez. The civil action was brought under section 36—1 of the Criminal Code of 1961 (Criminal Code) (Ill. Rev. Stat. 1981, ch. 38, par. 36—1), which provided for the forfeiture of property used with the knowledge and consent of the owner in the commission or attempt to commit certain crimes—in that case, syndicated gambling. When Dugan appealed the forfeiture of his car, the reviewing court recognized that ownership and title may not reside in the same person. The court determined that the knowledge and consent of the owner are paramount in determining whether a vehicle is subject to forfeiture. There, the term "owner" was used to describe one who has dominion or control over a thing, title to which is in another. *Dugan*, 125 Ill. App. 3d at 830.

In that case, the evidence showed that Dugan negotiated the car's purchase, paid the dealer for the vehicle, and returned the vehicle for repairs. Martinez had title and purchased the insurance, but allowed Dugan to borrow the car for an indeterminate period. She claimed that the money used to pay for the car came from cash that she kept in her home. However, the trial court found her testimony incredible. The reviewing court held that the evidence showed that Dugan was the true owner of the car and that his knowledge of, and consent to, the use of the car in the commission of the crime rendered it subject to forfeiture.

In *People v. 1991 Chevrolet Camaro*, 251 Ill. App. 3d 382 (1993), the forfeiture action was again brought pursuant to the Criminal Code. There the evidence showed that the father, Joseph Boehm, and his son, Edwin Boehm, purchased the car with cash belonging to both of them, but it was intended that the car be used as a family car. Joseph and his wife, Debra, were listed on the insurance as the principal drivers. Joseph testified that Debra was the primary driver, but Edwin could use any vehicle when he asked permission to do so. Edwin was listed as the primary driver of another vehicle, a Buick. Joseph testified he had no knowledge or any reason to know that Edwin would use the Camaro in connection with a burglary. Joseph became aware of Edwin's arrest only two months later. Edwin testified that his father did not know of the burglary. The title to the vehicle

was in the name of both the father and the son. The State conceded that the father did not know or have reason to know that the car was used in the commission of an offense. The trial court found for the father.

On appeal, the State argued that, under *Dugan*, the court should have found that Edwin was the true owner of the car. This court disagreed, distinguishing *Dugan* on its facts and noting that, in *Dugan*, the defendant negotiated and paid for the car, returned it for repairs, and kept it for his own use for an indeterminate period. Furthermore, the trial court there, as here, did not believe the testimony of the titleholder, and the judgment was affirmed as it was not against the manifest weight of the evidence. This court also noted that *Dugan* was largely dependent on its particular facts, and the court stated that what constitutes a sufficient ownership interest for an innocent claimant to avoid a forfeiture appears to depend on the particular facts of the case. *Chevrolet Camaro*, 251 Ill. App. 3d at 387-89. In *Chevrolet Camaro*, the evidence showed that the father had more than a naked legal title to the property and had no reason to know of the criminal conduct. The court thus concluded that the trial court's decision was not against the manifest weight of the evidence.

Claimant's reliance on *United States v. One 1986 Chevrolet Monte Carlo*, 817 F. Supp. 729 (N.D. Ill. 1993), is not of much aid in establishing his innocent owner defense. There, in a summary judgment proceeding, the claimant was merely attempting to establish that she had standing as an innocent owner because she financed her son's purchase of the car, and she licensed and held title to it, although the son appeared to have had exclusive possession. The government correctly argued that possession of bare legal title may be insufficient to establish ownership. However, there were disputed issues of material fact regarding whether she was nevertheless an innocent owner in light of her son's conduct and her possible joint adventure with her son. Thus, the government's motion for summary judgment was denied.

■ As in *Dugan*, we conclude here that the evidence was sufficient to show that Dina was the true owner of the car for forfeiture purposes even though Robert ostensibly retained some minimal interest in it as titleholder. Those factors supporting the trial court's decision have been previously enumerated and all of them need not be reiterated here. Suffice it to say, the evidence showed that Dina purchased the car with her own check, she signed the documents pertinent to the purchase, she made payments on the car, she was clearly the principal driver, and she retained dominion and control of the car and drove it on a regular basis. Furthermore, it is significant that the trial court

did not believe Robert's testimony regarding the indicia of his ownership. The evidence also clearly showed that Dina and Mohr had previously been arrested for drug offenses while using the car, that Dina knew of the presence of the heroin on this occasion, and that she incriminated Mohr. He in turn attempted to incriminate her. She thus cannot be deemed an innocent owner.

■ Even assuming *arguendo* that Robert presented some evidence of ownership, he did not prove by a preponderance of the evidence that he qualified as an innocent owner. Under the applicable innocent owner provisions of the Forfeiture Act, Robert had to prove that (1) he was not legally accountable for the conduct giving rise to the forfeiture, *did not acquiesce in it, and did not know and could not reasonably have known that the conduct was likely to occur*; (2) he did not hold the property jointly or in common with a person whose conduct gave rise to the forfeiture; and (3) he did not hold the property for the benefit of, or as nominee for, any person whose conduct gave rise to its forfeiture. 725 ILCS 150/8(A)(i), (C), (D) (West 2000).

Robert cannot pass the first hurdle. The testimony regarding the police interview with Robert and Phyllis shows that Robert knew of Dina's arrest in August 1999 for a drug violation when Mohr was the driver of the car, and Robert was aware that Dina blamed the possession of drugs on Mohr. Robert learned of Dina's and Mohr's drug use at that time. Dina was stopped in the car in December 1999 and was again arrested for a drug violation. As a result of Dina's first arrest, Robert threatened to sell the car and "throw" Dina out of the house and, in another instance, he threatened to sell the car and move to Florida. Thus, Robert cannot claim that he did not know and could not reasonably have known that a drug violation was likely to occur in connection with the car.

Citing *People v. 1991 Dodge Ram Charger*, 250 Ill. App. 3d 810 (1993), Robert claims that an innocent owner-father's interest in a vehicle jointly owned with his child is not subject to forfeiture where a third party (like Mohr) used the vehicle in committing a drug offense. In that case, the father paid for the vehicle and did not know of the third party. The reviewing court preserved the father's innocent owner interest from forfeiture because the son himself did not engage in conduct giving rise to the offense. Because the son knew about the conduct, his own interest was subject to forfeiture. However, the father, as a *joint owner* of the vehicle, successfully claimed on appeal that he was an innocent owner because it was "clear" that the father "knew nothing about, nor had reason to know about, the use of the truck for any drug-related activity." *1991 Dodge Ram Charger*, 250 Ill. App. 3d at 815. Such is not the case here.

464

Accordingly, we conclude that the trial court's decision in ordering the forfeiture of the vehicle was not against the manifest weight of the evidence.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and KAPALA, JJ., concur.