2016 IL App (3d) 140883

Opinion filed June 13, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit |
| Plaintiff-Appellant, | ) | Will County, Illinois |
| | ) | |
| v. | ) | Appeal No. 3-14-0883 |
| | ) | Circuit Nos. 10-MR-1185 and |
| 2009 CHEVROLET 2500, | ) | 11-MR-94 |
| VIN 1GCHK63689F188325, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | Honorable Gerald R. Kinney, |
| (Jeffrey Burton, Claimant-Appellee). | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Justice Schmidt concurred in the judgment and opinion.
Justice Carter dissented, with opinion.

**OPINION**

¶ 1    After defendant, Jeffrey[1] Burton, pled guilty to vehicle theft conspiracy, the State filed an amended forfeiture complaint against the vehicle he used in the commission of the crime. During the forfeiture proceeding, the trial court allowed Jeffrey Burton to collaterally attack his guilty plea and, subsequently, found in favor of Jeffrey Burton. We reverse.

---

[1]Throughout the appellate record, there is a discrepancy whether defendant's name is spelled Jeffery Burton or Jeffrey Burton. Both spellings are used throughout the record and refer to defendant in the above-captioned case.

¶ 2                                                BACKGROUND

¶ 3            The State charged Jeffrey Burton, by superseding indictment with the offenses of vehicle theft conspiracy (625 ILCS 5/4-103.2 (West 2010)), two counts of aggravated possession of a stolen motor vehicle (625 ILCS 5/4-103.2(a)(3) (West 2010)), and theft (720 ILCS 5/16-1(a)(1)(A), (b)(5) (West 2010)) based on events that took place on September 21, 2010. The jury trial began on August 22, 2011, before the Honorable Edward A. Burmila, Jr. The State presented evidence, including the testimony of two witnesses, Zachary Campbell and William Perry. After the testimony of these witnesses, the parties advised the court that they had reached a proposed negotiated plea agreement to resolve the criminal proceedings against Burton.

¶ 4            In exchange for Burton's guilty plea to the offense of vehicle theft conspiracy, the State agreed to dismiss counts II, III and IV of the superseding indictment. In addition, as part of the negotiated plea agreement, the State agreed Burton would not be prosecuted for the offenses of intimidation of a witness and subordination of perjury involving the testimony of Perry on August 23, 2011, during the jury trial in case No. 10-CF-1970.

¶ 5            Before accepting Burton's guilty plea on August 24, 2011, the court reviewed the allegations contained in count I, pertaining to the offense of vehicle theft conspiracy in violation of section 4-103.1 of the Illinois Vehicle Code (625 ILCS 5/4-103.1 (West 2010)). The charging instrument alleged Burton had conspired to commit the offense of aggravated unlawful possession of a stolen motor vehicle by agreeing with Campbell to the commission of that offense. The charge also alleged Burton performed an act in furtherance of the conspiracy agreement with Campbell by inspecting and then accepting delivery of a stolen Case Skid Steer, Model 90XT, ID #JAF0392759.

3

¶ 6    The court addressed whether Burton understood the jury trial would not continue if the court approved the terms of the negotiated plea agreement. The trial court asked "[a]nybody make any promises to you other than this agreement to get you to plead guilty?" to which Burton replied "[n]o, sir." Further, the court confirmed that "[n]ow knowing everything I've advised you of, being aware of the facts and the consequences to you of pleading guilty, how do you plead to this Class 1 felony offense–guilty or not guilty?" and Burton responded "[g]uilty, your Honor." Finally, the court stated:

> "The Court finds that the defendant's plea of guilty and waiver of his right now to a jury trial to be knowing and intelligently entered into and executed in writing.
>
> The Court find [*sic*] defendant's plea to be voluntary and without force and supported by the facts."

In accordance with the proposed plea, the court sentenced Burton to 48 months of probation.

¶ 7    On November 24, 2010, in Will County case No. 10-MR-1185, the State initiated a forfeiture proceeding directed against Burton's 2009 Chevrolet, VIN: 1GCHK63689F188325 (2009 Chevrolet). On April 11, 2012, the State amended the forfeiture complaint (Amended Complaint) in case No. 10-MR-1185 to rely on the statututory provisions allowing forfeiture of:

> "[a]ny vessel, vehicle or aircraft used with knowledge and consent of the owner in the commission of, or in the attempt to commit as defined in Section 8-4 of the Criminal Code of 2012 [citation], an offense prohibited by Section 4-103 of this Chapter, including transporting of a stolen vehicle or stolen vehicle parts, shall be seized by any law enforcement agency." 625 ILCS 5/4-107(k) (West 2010).

¶ 8    The Amended Complaint alleged:

> "That this cause of Action arises under the provisions of 625 ILCS 5/4-107(k), pertaining to the use of the above captioned vehicle in the commission of or attempted commission of any offense under 625 ILCS 5/4-103 including but not limited to the attempted commission of possession of stolen motor vehicle, or conspiracy to commit possession of stolen motor vehicle, or motor vehicle theft, or conspiracy to commit motor vehicle theft, or transportation of stolen vehicles, or conspiracy to commit transportation of stolen vehicles, or is accountable for the acts of another in the commission of any of the above offenses as defined in 720 ILCS 5/5-2."

This Amended Complaint requested that the court award the 2009 Chevrolet to the Tri-County Auto Theft Task Force (Task Force).

¶ 9    On January 27, 2011, the State filed an additional forfeiture complaint in case No. 11-MR-94 (2011 Complaint), directed against the same 2009 Chevrolet in case No. 10-MR-1185 based on the provisions of section 29B-1 of the Criminal Code of 1961 (Code) (720 ILCS 5/29B-1 (West 2010)).  The State alleged in the 2011 Complaint that the provisions of section 29B-1 supported the State's request for the forfeiture of Burton's 2009 Chevrolet based on the following facts:

> "That the stolen vehicles are criminally derived property and the organizing of the sale of the stolen vehicles is an attempted financial transaction which was done with the knowledge of Jeffery Burton in part to disguise or conceal the nature [*sic*], source or ownership of the stolen vehicles.  The above captioned vehicle facilitated this activity."

¶ 10    Burton opposed forfeiture on both petitions.  On May 29, 2014, Judge Gerald Kinney presided over a combined hearing on both pending complaints for forfeiture.  Police officer

5

Dwayne Killian was the first to testify for the State. Killian testified that he was part of a surveillance team that witnessed the theft of a Case Skid Steer, dump truck, trailer, and surface roller from Lucas Paving on September 21, 2010, without the owner's permission.

¶ 11    Killian testified that a confidential informant provided a tip to the Task Force regarding a possible theft from Lucas Paving on September 21, 2010. As part of the investigation, officers learned that Campbell hired two men, Dennis M. Wail and Samuel L. Turner, to steal the construction equipment from Lucas Paving. Killian explained that he was part of the team conducting surveillance near the area of Lucas Paving on September 21, 2010.

¶ 12    Killian observed Campbell arrive at the Lucas Paving lot on September 21, 2010, in a Yukon sport utility vehicle with Wail and Turner as his passengers. As part of the surveillance operation that night, investigators observed two men drive away in a stolen truck which was pulling a trailer also loaded with stolen construction equipment. The Yukon, driven by Campbell, followed the stolen truck off the lot. By all accounts, Burton was not present at Lucas Paving when the theft took place.

¶ 13    Killian testified that the Task Force observed and followed the stolen truck, trailer, and Yukon that left the Lucas Paving lot. Officers followed both vehicles as they merged on to I-80 and then exited I-80 at Houbolt Road. According to Killian, both drivers stopped and exchanged vehicles at this location. Campbell left the Yukon and became the driver of the truck and trailer, followed by the Yukon, back onto I-80. Eventually, Wail and Turner left Campbell and drove the Yukon to Snooker's Bar. At that time, Campbell drove the stolen truck with the construction equipment to the parking lot of a nearby laundromat where he met with Burton.

¶ 14    Killian testified that he observed Burton arrive at the laundromat in the 2009 Chevrolet. After his arrival, Burton parked the 2009 Chevrolet, exited his truck, stepped up on the stolen

6

trailer, and then stepped into the bucket of the skid steer. According to Killian, he could see Burton speaking with Campbell but could not hear the contents of their conversation.

¶ 15 Killian testified that Campbell and Burton remained at the laundromat for approximately 5 to10 minutes before both men simultaneously left the parking lot in their respective vehicles. Burton drove the 2009 Chevrolet out of the parking lot with Campbell following directly behind Burton. Burton drove south on Route 53 until turning east on Vernon Road. After turning onto Vernon Road, Burton parked his 2009 Chevrolet in the driveway of Perry. At the same time, Campbell parked the truck and trailer parallel to Perry's driveway. Killian subsequently testified that Perry's property was large enough to physically store and hide the stolen equipment.

¶ 16 Shortly after the 2009 Chevrolet and stolen truck were parked, Killian and other officers approached Perry's property. Killian testified that the owner of Lucas Paving verified no one had permission to take any equipment from the property on September 21, 2010.

¶ 17 In addition to the testimony admitted during the State's evidence during the combined forfeiture hearing, the trial court also took judicial notice of Perry's guilty plea to perjury in case No. 11-CF-1674; Burton's felony file and guilty plea to possession of a stolen motor vehicle in case No. 94-CF-2375, and Burton's felony file and guilty plea to vehicle theft conspiracy in case No. 10-CF-1970.

¶ 18 Before the State rested, the court also received People's exhibit No. 1, a DVD of Perry's interview with a detective at the Will County adult detention facility on August 23, 2011. During this interview, Perry admitted he gave perjured testimony on the same day as part of Burton's criminal trial. Perry told the detective that he provided false information during his testimony because Burton urged him to do so. The court also received People's exhibit No. 2, a transcript of Perry's perjured testimony in case No. 10-CF-1970.

7

¶ 19      The court received People's exhibit No. 3, the transcript of Campbell's trial testimony in case No. 10-CF-1970. According to this transcript, a couple of weeks before September 21, 2010, Ronnie Talmadge telephoned Campbell to discuss the construction equipment located at Lucas Paving. A week or so later, Campbell received a telephone call from Burton. Burton told Campbell that he was interested in "hot" or "stolen" construction equipment. After speaking with Burton, Campbell contacted Talmadge and planned the theft from Lucas Paving that took place on September 21, 2010.

¶ 20      The State introduced People's exhibit No. 4 for the court's consideration. This exhibit consisted of a transcript of Burton's guilty plea in case No. 10-CF-1970 to count I of the superseding bill of indictment, vehicle theft conspiracy. The court also received People's exhibit Nos. 7, 8, 9, and 10, photographs of the stolen construction equipment.

¶ 21      After the State rested its case, Burton moved for a directed finding. The court took the matter under advisement before Burton began presenting his evidence on May 29, 2014.

¶ 22      Perry was the first witness who testified on behalf of Burton during the combined forfeiture hearing. Perry began by saying that, in 2010, he lived in a trailer that was rented by his girlfriend on Vernon Road in Godley, Illinois. He ran a detailing shop out of his shed located on the property. Perry denied seeing the dump truck and trailer with any of the stolen equipment, but went on to say that nothing like that would fit in his shed. Perry testified that when Burton came to his home on September 21, 2010, he and Burton walked into Perry's backyard where they spoke for about three minutes before the police arrived.

¶ 23      The combined hearing was continued to June 4, 2014. After hearing brief arguments from both parties on Burton's request for a directed finding, the court announced that it had to deny the motion for directed finding because Burton had pled guilty to the offense of conspiracy

to commit motor vehicle theft in Will County case No. 10-CF-1970. The case was then continued to August 20, 2014, for further evidence.

¶ 24 Due to technical audio difficulty on August 20, 2014, a transcript of the combined hearing was unavailable. However, the record contains a short "Agreed Statement of Facts Pursuant to Supreme Court Rule 323(c)" concerning the evidence and arguments presented to the court on August 20, 2014.

¶ 25 According to the agreed statement of facts, Campbell testified in support of Burton on August 20, 2014. Campbell explained to the court that he and Burton spoke frequently during the week preceding the theft of the construction equipment. During these conversations, Burton asked Campbell questions about the number of operating hours on the skid steer, whether the skid steer appeared to be in good shape and its brand name. Campbell responded that he did not know how many operating hours were on the skid steer. In one of the phone calls, Burton told Campbell the skid steer was going to a friend of Burton's for farm use rather than construction purposes. Campbell testified that he specifically recalled this conversation because Campbell wanted to ensure that the equipment would not be used in the geographical area from which it was stolen.

¶ 26 Campbell testified that Burton instructed Campbell to meet him at the laundromat in Braidwood. Campbell described how the other two accomplices went to a bar and left Campbell alone in the laundromat parking lot before Burton drove up in his 2009 Chevrolet. Once Burton arrived in his truck, Campbell asked Burton whether he wanted to purchase all of the equipment. Burton responded that he only wanted the skid steer, but that he may have a buyer for the other construction equipment. After Campbell and Burton briefly inspected the skid steer, Burton told Campbell to follow him. Campbell followed Burton's 2009 Chevrolet until they reached a

residence. Campbell stayed in the truck with the equipment. After only a couple of minutes parked at the residence, the police arrived.

¶ 27　　　　Further, Campbell explained that he made a deal with the government to testify truthfully in any case against Burton and if he did so, the State would not prosecute Campbell for his role in the vehicle thefts. Over the State's objection, Campbell testified that he had a pending misdemeanor driving while under the influence and paraphernalia charge, but had no deal with the government for those cases.

¶ 28　　　　Burton also testified before the court on August 20, 2014. According to Burton's testimony, he did not have any use for the stolen skid steer because he recently purchased a 1960 Case Excavator. Burton explained that a stolen machine cannot be repaired at a dealership and a stolen skid steer would not be useful to him. Burton testified that Campbell called him on September 21, 2010, while Campbell was driving south on I-55. Burton agreed to meet Campbell in Braidwood. Burton testified he drove his 2009 Chevrolet to the parking lot at the laundromat when he saw Campbell pull up driving a truck with a trailer containing construction equipment.

¶ 29　　　　According to Burton, he did not know that Campbell was going to have any equipment with him. When Burton left the laundromat he did not know that Campbell was following him to Perry's house with the stolen equipment.

¶ 30　　　　Burton denied that he told Campbell to follow him from the parking lot to Perry's house, told Perry that he wanted to store the equipment at Perry's place, and told Campbell to get rid of the other stolen equipment in Chicago. Burton denied that he intended to buy any equipment from Campbell. Burton also denied that he told Campbell he might have a buyer for the roller and denied that he inspected the skid steer.

10

¶ 31    In addition, over the State's objection, Burton denied his guilt concerning a purported vehicle theft conspiracy with Campbell as charged in count I in case No. 10-CF-1970. Over the State's objection, Burton told the court that he pled guilty to that criminal offense because his wife was pregnant and expecting a baby. Burton told the court he feared further arrest and prosecution relating to the perjured testimony of Perry provided to the jury on August 23, 2011, during Burton's criminal case.

¶ 32    According to the agreed statement of facts, the State's objection to this testimony was based on section 29B-1(k)(9) of the Code[2] which provides that, "A defendant convicted in any criminal proceeding is precluded from later denying the essential allegations of the criminal offense of which the defendant was convicted in any proceeding under this Article ***." 720 ILCS 5/29B-1(*l*)(9) (West 2010). After Burton's testimony, Burton rested his case.

¶ 33    The court heard closing arguments from each attorney and then took the matter under advisement. On October 14, 2014, the parties did not appear when the court issued a short written decision. The court's order states as follows: "The Court finds in favor of the Respondent as to all issues."

¶ 34    The State filed a timely appeal.

¶ 35                                    ANALYSIS

¶ 36    On appeal, the State contends the "record unequivocally proves that [Burton] used his truck to accommodate and facilitate the conspiracy to steal and dispose of the skid steer." Consequently, the State argues that the trial court's ruling denying forfeiture was against the

---

[2]The State's appellate brief points out that although the agreed statement of facts includes section 29B-1(k)(9) as the citation for statutory authority for its objection, the correct statutory basis for that provision is section 29B-1(*l*)(9).

manifest weight of the evidence and requests a reversal of the trial court's decision to deny both forfeiture complaints. Burton asserts the trial court's ruling was correct.

¶ 37    We begin with a brief review of the forfeiture process and the requisite burdens of proof on both parties. A civil forfeiture involves a civil proceeding consisting of a two-step process. During the first step of the judicial *in rem* proceeding, the State need only prove its right to the property by a preponderance of the evidence. *People v. 1995 Ford Van,* 348 Ill. App. 3d 303, 306 (2004). A proposition is proven by the preponderance of the evidence when, considering all the evidence, the proposition on which the party has the burden of proof is more probably true than not true. *People v. Love,* 404 Ill. App. 3d 784, 787 (2010). Once the court finds that the State's evidence established its proposition, then the process reaches its second phase where the statutory burden shifts to the claimant, to demonstrate by a preponderance of the evidence that the claimant's interest in the property is not subject to forfeiture. *People ex rel. Nerheim v. 2005 Black Chevrolet Corvette*, 2015 IL App (2d) 131267, ¶ 18 (citing 720 ILCS 5/36-2 (West 2012)).

¶ 38    In any forfeiture case, the trier of fact determines the credibility of the witnesses and evaluates their testimony, drawing reasonable inferences and reaching conclusions to which the evidence lends itself. *People v. Parcel of Property Commonly Known as 1945 North 31st Street, Decatur, Macon County, Illinois*, 217 Ill. 2d 481, 507-08 (2005). Accordingly, this court will not reverse a trial court's decision regarding forfeiture unless it is against the manifest weight of the evidence. *Id.* at 508 (citing *People ex rel. Birkett v. 1998 Chevrolet Corvette,* 331 Ill. App. 3d 453, 459 (2002); *People v. $5,970 United States Currency*, 279 Ill. App. 3d 583, 588 (1996); *People v. $52,204.00 United States Currency*, 252 Ill. App. 3d 778, 782-83 (1993)).

¶ 39    For purposes of this appeal, Burton asserts that the trial court presumably found Campbell to be less than credible. Based on Burton's argument and the nature of the court's

12

ruling, we will assume the trial court found Campbell's testimony to be unreliable. Similarly, we will also assume for purposes of this appeal that the trial court found Perry's credibility negated based on his guilty plea to the offense of perjury. Consequently, we will exclude any information provided by Campbell and Perry when evaluating the manifest weight of the evidence.

¶ 40    As part of our analysis focused on the manifest weight of the evidence, we first review the content of Killian's testimony. Burton did not challenge Killian's veracity and corroborated many of Killian's visual observations. Both men agreed Burton drove the 2009 Chevrolet to the laundromat parking lot where Burton spoke to Campbell and then drove his 2009 Chevrolet to Perry's residence. Hence, we conclude the manifest weight of the evidence reveals Burton drove the 2009 Chevrolet to his meeting with Campbell at the parking lot and then drove his 2009 Chevrolet to Perry's house. At this location, Burton and Campbell were both arrested together and the stolen equipment was seized at the same location.

¶ 41    Next, we review the information arising out of Burton's guilty plea in case No. 10-CF-1970. The transcript of the guilty plea proceedings reveals that, mid-trial, Burton elected to plead guilty to a criminal offense. The trial court carefully informed Burton that he was pleading guilty to "the offense of Vehicle Theft Conspiracy, a Class 1 felony, all right [*sic*], with the intent of the Offense of Aggravated Unlawful Possession of a Stolen Motor Vehicle were to be committed[.] [Y]ou agreed with a Zachary Campbell to the commission of this offense and performed an act in furtherance of it by accepting delivery of an orange Case Skid Steer with a particular model number." The transcript unequivocally documents that Burton was admonished of his rights, waived those rights and voluntarily pled guilty to the offense of vehicle theft conspiracy.

13

¶ 42   Next, our analysis brings us to consider the testimony Burton provided to the court, professing his innocence with respect to his lack of criminal intent to knowingly conspire with Campbell concerning theft. Over the State's objection, Burton testified that he did not conspire with Campbell for a criminal purpose. The court allowed Burton to explain that Burton unexpectedly received a call from Campbell that night and Burton agreed to meet Campbell because he had no reason to know Campbell would be bringing stolen equipment to the agreed meeting place. Burton told the court that after speaking to Campbell in person, Burton left the parking lot but was completely unaware that Campbell followed Burton's 2009 Chevrolet to Perry's house. According to Burton, he did not notice Perry followed him with the stolen equipment until the officers arrived and arrested both men.

¶ 43   Burton also explained to the court that once Perry provided perjured testimony during Burton's criminal trial, Burton reached a compromise with the State to avoid being held in jail while his wife was pregnant. Burton explained that he entered a guilty plea on August 24, 2011, ending the criminal jury trial, in order to avoid additional criminal charges related to the perjury of Perry.

¶ 44   Well established judicial precedent recognizes that a guilty plea constitutes a judicial admission of guilt concerning the charged criminal offense. *Spircoff v. Stranski*, 301 Ill. App. 3d 10, 15-16 (1998). The trial court seemed unaware that Burton should have been collaterally estopped from later denying the facts admitted in the criminal case during the subsequent forfeiture proceeding. *People ex rel. Daley v. 1986 Honda*, 182 Ill. App. 3d 322, 326 (1989).

¶ 45   The agreed statement of facts submitted to this court clearly documents the State's continuing objection to Burton's attempt to negate the significance of his guilty plea. Since the basis for the 2011 Complaint in case No. 11-MR-94 was premised on section 29B-1 of the Code,

14

the State cited the provisions of section 29B-1 when opposing the trial court's willingness to allow Burton's explanation concerning the reasons behind his guilty plea. The relevant provision of the Act cited by the State provides as follows: "[a] defendant convicted in *any criminal proceeding* is precluded from later denying the essential allegations of the criminal offense of which the defendant was convicted in any proceeding under this Article regardless of the pendency of an appeal from that conviction." (Emphasis added.) 720 ILCS 5/29B-1(*l*)(9) (West 2010). Therefore, as a matter of law, we conclude the trial court improperly considered Burton's self-serving statements explaining the reasons for his guilty plea.

¶ 46       Consequently, the State's evidence supporting forfeiture consisted of Burton's judicial admission of guilt concerning his intent to facilitate the commission of a criminal offense and Killian's unimpeached observations that Burton used the 2009 Chevrolet when meeting with Campbell and bringing the stolen equipment to Perry's residence. This evidence was not refuted by any admissible evidence offered by Burton during the second phase of the combined forfeiture proceeding. Consequently, we conclude the trial court's ruling denying forfeiture was contrary to the manifest weight of the unrefuted evidence presented by the State in both cases.

¶ 47                                            CONCLUSION

¶ 48       We reverse the circuit court of Will County's denial of forfeiture and remand these cases with instruction for the trial court to grant both petitions for forfeiture.

¶ 49       Reversed and remanded with directions.

¶ 50        JUSTICE CARTER, dissenting.

¶ 51       In this appeal, the State argues that the trial court erred in denying the State's forfeiture complaints. With no discussion on the record, the trial court issued a written order "in favor of" Burton as to all issues. The majority holds that the trial court's denial of forfeiture was against

15

the manifest weight of the evidence for both complaints. I would affirm the trial court's denial of relief to the State under the forfeiture complaints, which were brought pursuant to: (1) section 4-107(k) of the "Anti-Theft Laws" article in the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/4-107(k) (West 2010)); and (2) section 29B-1 of the "Money Laundering" article in the Criminal Code (720 ILCS 5/29B-1 (West 2010)).

¶ 52        Prior to my discussion of the forfeiture complaints, I would point out that the trial court's denial of Burton's motion for directed finding on forfeiture at the end of the State's case-in-chief does not lessen my conclusion that the trial court's ultimate finding in favor of Burton was not against the manifest weight of the evidence. In addressing a motion for directed finding in a non-jury case (735 ILCS 5/2-1110 (West 2010)), the trial court should apply a two-step analysis, first deciding issues of law and then issues of fact. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 275-76 (2003). However, the trial judge in this case only applied the first step of the analysis by deciding the State had made a *prima facie* showing of its right to forfeiture as a matter of law based on the evidence of Burton's plea of guilty to vehicle theft conspiracy. The trial court failed to proceed to the second step and make credibility findings and weigh the evidence. The trial judge specifically stated that regardless of an eventual credibility finding related to Campbell and Perry, "the fact that we have a plea to conspiracy to commit motor vehicle theft of some kind is certainly enough to get beyond the motion for directed finding." Thus, the record shows that the trial judge never applied the relevant analysis when deciding whether the evidence established the State's *prima facie* case.

¶ 53        Therefore, I disagree with the State that the trial court's denial of the directed finding indicated the State had met its burden of proof and that it was against the manifest weight of the evidence for the trial court to find in favor of Burton under both forfeiture theories. I agree with

16

the majority that the nature of the trial court's ruling indicates that the trial court found the testimony of Perry and Campbell not to be credible. See *supra*, ¶ 39. Thus, I would determine that left only Burton's guilty plea and Killian's testimony as to the police surveillance and the manifest weight of the evidence did not support the granting of either forfeiture complaint.

¶ 54                                                    I. Section 4-107(k) of the Vehicle Code

¶ 55          Under one complaint, the State alleged it was entitled to forfeiture under section 4-107(k) of the Vehicle Code. 625 ILCS 5/4-107(k) (West 2010). Under section 4-107(k) of the Vehicle Code, a vehicle "used with knowledge and consent of the owner in the commission of, or in the attempt to commit *** an offense prohibited by Section 4-103 of [the Vehicle Code], including transporting of a stolen vehicle or stolen vehicle parts, shall be seized." 625 ILCS 5/4-107(k) (West 2010). A vehicle is used in the commission of a crime if it facilitates the commission of the crime in some way. *People v. Adams*, 318 Ill. App. 3d 539, 544 (2001).

¶ 56          In this case, Burton pled guilty to vehicle theft conspiracy under section 4-103.1 of the Vehicle Code. 625 ILCS 5/4-103.1 (West 2010). The allegations contained in the charging instrument indicated that Burton agreed with Campbell to commit the offense of aggravated unlawful possession of a stolen motor vehicle in violation of section 4-103.2 of the Vehicle Code and performed an act in furtherance thereof by accepting delivery of and inspecting the orange skid steer. Although I agree that Burton was precluded from denying facts that he admitted in the criminal case in which he pled guilty and was precluded from providing a rationale for his plea, I do not agree that we cannot consider the remainder of Burton's testimony related to other matters. See *1986 Honda*, 182 Ill. App. 3d at 326. In other words, Burton's testimony that was not contrary to the factual basis of his guilty plea or the underlying charge could be considered.

17

¶ 57        Prior to Burton entering his guilty plea, Campbell and Perry had testified for the State. Perry testified that he and Burton had planned to go to a bar on the evening in question. Perry indicated that when Burton arrived at Perry's home, Perry was measuring his shed because Perry wanted to expand its size. Perry ran a detailing business from his shed, which was "pretty full." Campbell testified that a week prior to Campbell stealing the construction equipment, Burton had indicated he was interested in some stolen construction equipment. As the factual basis for the plea, Burton conceded that the testimony of Campbell and Perry was "what happened."

¶ 58        Despite the underlying factual basis for Burton's guilty plea and Killian's surveillance testimony, the evidence does not show that the 2009 Chevrolet was used "in the commission of" vehicle theft conspiracy. To justify forfeiture there must be some nexus between the use of the vehicle and the commission of offense to show that the vehicle was used to facilitate the crime. Here, the evidence merely indicated that Burton used his 2009 Chevrolet to transport himself from one meeting place to another. Borrowing from an observation made by our supreme court in a proceeding for forfeiture of an automobile in *Boling v. Division of Narcotic Control of the Department of Public Safety*, 24 Ill. 2d 305, 308 (1962), albeit under different circumstances, in this case the relation between the use of the 2009 Chevrolet and the triggering offense for forfeiture was "casual, not causal."

¶ 59        Additionally, the fact that the stolen truck carrying the stolen trailer with the stolen skid steer followed Burton while he was driving the 2009 Chevrolet is not evidence that Burton used the 2009 Chevrolet to actually transport a stolen vehicle. I do not agree with the majority that Burton's judicial admission of guilt and Killian's observations of Burton's movements from place to place was adequate evidence to prove that Burton "used" the 2009 Chevrolet to "bring[] the stolen equipment to Perry's residence." See *supra* ¶ 46. There was no factual basis as part of the

18

plea or in the underlying charging instrument to support a finding that the 2009 Chevrolet was used in the offense.

¶ 60     Therefore, I would conclude that it was not against the manifest weight of the evidence for the trial court to find that there was insufficient evidence of the use of the 2009 Chevrolet "in the commission of" an applicable offense to support a forfeiture under section 4-107(k) of the Vehicle Code.

¶ 61                              II. Section 29B-1of the Criminal Code

¶ 62     In its second complaint, the State alleged forfeiture of the 2009 Chevrolet pursuant to section 29B-1 of the Criminal Code.  Under the applicable portion of section 29B-1 of the Criminal Code, the following are subject to forfeiture: "property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this Article." 720 ILCS 5/29B-1(h)(1)(B) (West 2010).  A "violation of this Article" refers to "money laundering" as defined in section 29B-1of the Criminal Code.  Although the State did not specify a specific subsection of the money laundering statute that Burton was alleged to have violated, the allegations of the complaint parallel section 29B-1(a)(1)(B)(i) of the Criminal Code, under which a person commits "money laundering" when, knowing that property involved in a "financial transaction" represents the proceeds of an unlawful activity, he conducts or attempts to conduct such a financial transaction, knowing that the "the financial transaction is designed *** to conceal or disguise the nature, the location, the source, the ownership or the control of the criminally derived property."  See 720 ILCS 5/29B-1(a)(1)(B)(i) (West 2010).

¶ 63     In this case, the complaint alleged the 2009 Chevrolet was used to facilitate the organizing of the sale of the stolen vehicles in an attempt to disguise or conceal the nature, source, or ownership of the stolen vehicles.  Again, we consider Killian's testimony and only the

19

portion of Burton's testimony that did not contradict facts he admitted in his guilty plea.  See 720 ILCS 5/29B-1(*l*)(9) (West 2010)).  However, there was no evidence of a "financial transaction" that had been designed "to conceal or disguise the nature, the location, the source, the ownership or the control of the criminally derived property."  That is, other than Campbell's testimony, which appears not to have been accepted by the trial court based on the trial court's ruling, there was no other evidence of a financial transaction.  Additionally, other than evidence that the 2009 Chevrolet was used to transport Burton from point A to point B to point C, there was no indication it was used to "facilitate" the type of financial transaction described by section 29B-1(a)(1)(B)(i) of the Criminal Code in order to support forfeiture.

¶ 64        Thus, I would conclude that it was not against the manifest weight of the evidence for the trial court to find that there was insufficient evidence that the 2009 Chevrolet was "used, or intended to be used, in any manner or part, to commit, or facilitate the commission" of money laundering to support forfeiture under section 29B-1 of the Criminal Code.

¶ 65                                III. Conclusion

¶ 66        For the foregoing reasons, I would affirm the trial court's ruling in favor of Burton as to both of the State's forfeiture complaints.